Robert H. BURNS, Jr., Defendant Below–Appellant,

v.

STATE of Delaware, Plaintiff Below–Appellee.

No. 77, 2012.

Supreme Court of Delaware.

Submitted: Aug. 6, 2013.
Decided: Sept. 25, 2013.

Eugene J. Maurer, Jr., Esquire, of Wilmington, Delaware for Appellant.

Elizabeth R. McFarlan, Esquire, and Josette D. Manning, Esquire (argued), of the Department of Justice, Wilmington, Delaware for Appellee.

Before BERGER, JACOBS and RIDGELY, Justices.

RIDGELY, Justice:

Robert Burns was convicted by a Superior Court jury of several counts of varying degrees of sexual assault against children. We have affirmed Burns' conviction on direct appeal.[1] Now, Burns seeks post-conviction relief and argues that he received inadequate assistance of counsel in violation of the Sixth Amendment to the United States Constitution. Burns claims his trial counsel erred in the following ways: by not affirmatively recommending Burns take an plea deal, by eliciting testimony from an adverse witness that could have implied Burns invoked his Fifth Amendment right to silence, by waiving certain foundational requirements to out-of-court statements, by permitting a characterization of the complaining witnesses as "victims," and by failing to object to the State's summation. Finally, Burns claims that the cumulative effect of his defense counsel's actions resulted in an unfair trial. The Superior Court adopted the findings of a Commissioner and denied Burns' motion for post-conviction relief. We find no abuse of discretion in the Superior Court's denial of Burns' motion for postconviction relief. Accordingly, we affirm.

### Facts and Procedural History

In April of 2006, Robert Burns ("Burns") attended the twelfth birthday party of his niece Sara Ames.[2] Upon seeing Burns, Sara's sister, Tina, recalled several occasions when Burns had inappropri-

---

1. *Burns v. State,* 2009 WL 2490253 (Del. Aug. 17, 2009).

2. Pseudonyms have been assigned to the two complainants.

ately touched her. Tina conferred with Sara, who also recalled several similar incidents. Eventually, Tina and Sara Ames informed their parents of these incidents. Delaware State Police investigated the claims and arrested Burns.

Prior to trial, the prosecutor met with Burns' defense counsel ("Counsel"), to propose a plea offer. The prosecutor offered to permit Burns to plead guilty to two counts of Unlawful Sexual Contact in the Second Degree, and the State would recommend a probationary sentence. Burns would also have to register as a sex offender. Counsel conveyed the terms of the plea deal to Burns. Burns decided not to take the deal.

· Burns was convicted by a Superior Court jury of Rape Second Degree, two counts of Unlawful Sexual Contact Second Degree, and one count of Continuous Sexual Abuse of a Child. The jury found Burns not guilty on all charges relating to Tina, except for one count of Unlawful Sexual Contact Second Degree. On that charge the jury could not agree. Burns was sentenced to 41 years in prison, suspended after 35 years for two years of probation. We affirmed on direct appeal.

Burns moved for postconviction relief through new counsel, alleging that he was denied his Sixth Amendment right to counsel. The Superior Court adopted a Commissioner's Report and Recommendation,

denying Burns' motion for postconviction relief.[3] This appeal followed.

During the pendency of this appeal, the United States Supreme Court decided *Lafler v. Cooper*,[4] where the Court addressed for the first time a claim of ineffective assistance of counsel that caused the rejection of a plea offer and the imposition of a more severe sentence. The Court in *Lafler* determined that a defendant's Sixth Amendment right to counsel extended to the plea bargaining process. We remanded this case to the Superior Court to address the application of *Lafler*.[5] The Superior Court considered the application of *Lafler* and denied Burns' motion for postconviction relief.[6]

### Discussion

■■■ We review the Superior Court's denial of a motion for post-conviction relief for abuse of discretion.[7] We review questions of law arising from the denial of a motion for post-conviction relief *de novo*.[8]

■■■ "[I]n all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defense."[9] Counsel must "consult with the defendant on important decisions and [must] keep the defendant informed of important developments in the course of the prosecution."[10] Under the *Strickland* test for ineffective assistance of counsel, petitioner must show that "counsel's representation fell below an

---

3. *State v. Burns*, No. 0605017137, 2012 WL 1413157 (Del.Super.Ct. Jan. 26, 2012) (adopting a Commissioner's report and recommendations dated Dec. 19, 2011).

4. *Lafler v. Cooper*, —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

5. *Burns v. State*, No. 77, 2012 (Del. Nov. 14, 2012) (ORDER).

6. *Burns v. State*, No. 77, 2012, No. 0605017137 (Del.Super.Ct. July 10, 2013) (ORDER) (hereinafter "Op. II").

7. *Claudio v. State*, 958 A.2d 846, 850 (Del. 2008) (citing *Outten v. State*, 720 A.2d 547, 551 (Del.1998)).

8. *Id.* (citing *Outten*, 720 A.2d at 551).

9. U.S. Const. Amend. VI.

10. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

objective standard of reasonableness"[11] and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[12] In order to meet the second prong of the *Strickland* test, Petitioner has the burden to "affirmatively prove prejudice."[13] The *Strickland* test applies to Counsel's actions during plea negotiations as well as during the trial proceedings.[14] Prejudice in the context of plea negotiations is demonstrated when:

> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.[15]

The Court in *Strickland* cautioned:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[16]

### Burns' Rejection of the Plea Offer

■ Burns claims that his defense counsel failed to competently advise Burns during his consideration of the plea offer. Burns argues that "any prudent defense attorney" would have found the prospect of his client facing a mandatory minimum prison sentence too risky, especially when the State has offered probation in exchange for a guilty plea. Essentially, Burns argues Counsel should have more vigorously tried to persuade him to accept the plea offer.

Counsel communicated to Burns the details of the plea offer, and he explained that Burns faced jail time if they were unsuccessful at trial. Counsel also explained the downside of accepting the plea agreement, which included registration as a sex offender and losing the right to vote. But Counsel stressed to Burns the plea was "generous." Prior to the trial, Burns repeatedly asserted his innocence and indicated that he would not accept any plea that would require him to register as a sex offender. Throughout his representation of Burns, Counsel maintained that in his professional opinion, he believed that the case was "winnable." Counsel did not make a recommendation one way or the other as to whether Burns should take the plea.

In *Lafler*, defense counsel made an objective and plain error in advising the defendant as to the applicable law.[17] As a

---

11. *Id.*

12. *Id.* at 694, 104 S.Ct. 2052.

13. *Id.* at 693, 104 S.Ct. 2052.

14. *Lafler*, 132 S.Ct. at 1384 (citing *Missouri v. Frye*, ⸺ U.S. ⸺, 132 S.Ct. 1399, 1408, 182 L.Ed.2d 379 (2012)).

15. *Id.* at 1385.

16. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

17. *See Lafler*, 132 S.Ct. at 1383 (noting that Lafler's "attorney convinced him that the prosecution would be unable to establish his intent to murder [the victim] because she had been shot below the waist").

result, the defendant turned down two very advantageous plea offers and, after being convicted, was sentenced to a mandatory minimum sentence of 15 years in prison.[18] The U.S. Supreme Court held that a fair trial does not cure ineffective assistance of counsel at the plea bargaining stage.[19] The Court did not replace the traditional *Strickland* test, but rather offered an example of a *Strickland* analysis in the plea bargaining context. As to the prejudice prong of *Strickland,* the Court examined whether "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea."[20]

Counsel explained the benefits of accepting the plea offer in a letter to Burns. Counsel clearly articulated to Burns the potential of mandatory incarceration in the event that he lost at trial. In his letter to Burns, Counsel wrote, "The beneficial aspects of the plea offer are that you would be freed from the possibility of the mandatory incarceration that would be imposed in the event that you were convicted...."[21] Counsel also explained the downside of accepting such a plea, namely that Burns would have to register as a sex offender. Counsel went on to offer his professional opinion that the case could be won, but that success depended largely upon the credibility of witnesses at trial. Counsel stated: "The bottom line is that this case is one that can be won, *but is also one that I cannot guarantee such a result.*"[22] Counsel presented Burns with enough information to make an informed decision about whether or not to accept the plea. Counsel adequately informed Burns of the terms of the plea offer, the conse-

quences of not taking the offer, and the consequences of accepting the offer. It was not objectively unreasonable for Counsel to express his qualified professional opinion that the case was winnable. The Superior Court did not abuse its discretion in finding that Counsel's conduct did not fall below objective standards of reasonableness.

As to the prejudice prong, although Burns now claims he would have accepted the plea if Counsel recommended it, at the time of the offer Burns insisted that he would not accept a plea that included registration as a sex offender. The Superior Court found that Burns failed to satisfy the prejudice prong of *Strickland,* as refined by *Lafler,* that but for Counsel's actions, Burns would have accepted the plea offer. The record supports this finding.

### Counsel's Questioning of the Chief Investigative Officer

■ Burns next claims that during cross-examination of Chief Investigative Officer, Detective Grier, Counsel allowed, without objection, Det. Grier to raise the inference that Burns had asserted his Fifth Amendment right to silence. As a result of Counsel's failure to object, the Superior Court failed to give a contemporaneous corrective instruction.

■ "[T]he Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of

18. *Id.*

19. *Id.* at 1386.

20. *Id.* at 1391.

21. Appendix to Appellant's Opening Brief at A–3.

22. *Id.* (emphasis added).

guilt."[23] "While the State may not put a penalty on the exercise of a constitutional right, 'every reference to the exercise of the right to remain silent [does not] mandate ... reversal.'"[24] Burns seeks to extend the principle that forbids the State or the court to reference the accused's exercise of the right to silence to include the State's witnesses. Burns argues: "surely it is ineffective for the defense attorney himself, through imprecise questioning, to elicit the same information."[25]

At trial, during the cross-examination of the Chief Investigating Officer, Detective Grier, Counsel asked a number of questions about the police investigation:

Q. Other than the statements given by the girls, what investigation did you do of the facts?

A. I attempted to interview your client.

Q. Other than try and say you attempted to interview my client, what did you do, did you go to the house and try to interview his wife?

A. No I did not.

. . . .

Q. So you did nothing except what you just said, you tried to interview my client?

A. We conducted a forensic interview with the victims.

Q. So the investigation in this case consisted of taking statements from the girls, and that was it, except you didn't get a chance to speak with the defendant, isn't that it, nothing else was done?

A. That's correct.

. . . .

Q. So you found nothing in their statements after listening to them live and playing them again that you felt warranted further investigation; is that correct?

A. I attempted further investigation, I attempted to conduct a suspect interview.[26]

It is unnecessary to examine whether Counsel's conduct fell below an objective standard of reasonableness, as Burns has failed to show prejudice. Det. Grier merely stated that he was not able to interview Burns. Det. Grier did not specifically reference the Fifth Amendment right to remain silent or even imply that Burns invoked that right. Instead, the testimony supports an inference that the police conducted an investigation that was deficient. Due to this line of questioning, Det. Grier admitted that he did not interview Burns' wife, who would have been present in Burns' home during the alleged acts of abuse. We conclude that Burns has not shown prejudice under *Strickland.*

### *Counsel's Waiver of the* Smith v. State *Requirements*

Title 11, Section 3507(a) of the Delaware Code provides: "In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value."[27] Under this Court's opinion in *Smith v. State,* for the provisions of § 3507 to apply, "the declarant must be called as a witness by the party introducing the statement

**23.** *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

**24.** *Revel v. State,* 956 A.2d 23, 27–28 (Del. 2008) (alteration in original) (omission in original) (quoting *Lewis v. State,* 626 A.2d 1350, 1358 (Del.1993)).

**25.** Appellant's Opening Brief at 15.

**26.** Appendix to Appellant's Opening Brief at A–6.

**27.** 11 *Del. C.* § 3507(a).

and the direct examination of the declarant 'should touch both on the events perceived and the out-of-court statement itself.'" [28] The statement must be established as voluntary [29] and the witness must be asked if the prior statement was true.[30] This rule applies regardless of "whether the witness' in-court testimony is consistent with the prior statement or not." [31] Finally, "the statement must be offered into evidence no later than at the conclusion of the direct examination of the declarant." [32]

At trial, Counsel waived the foundational requirements of § 3507 with regard to the statements of Tina and Sara Ames.[33] As a result, four other third party witnesses were presented and cross-examined before Tina and Sara testified. Burns argues that such a waiver under these circumstances amounts to ineffective assistance of counsel. We disagree.

The Superior Court found that Counsel's failure to object to the introduction of Tina and Sara Ames' § 3507 statements was a tactical decision. In an affidavit, Counsel explained that this tactical decision was aimed at highlighting the inconsistencies in the girls' stories. Further, Counsel wanted to be able to argue that there was a possibility that the statements may have been fabricated because of pre-existing an-

imosity by the mother of the girls towards Burns. Accordingly, the trial court found that Counsel's conduct was reasonable.

Under *Strickland,* the strategic decisions made by counsel are entitled to a strong presumption of reasonableness.[34] "It should be noted that even evidence of '[i]solated poor strategy, inexperience, or bad tactics do[es] not necessarily amount to ineffective assistance of counsel.'" [35] Counsel testified by affidavit that he made a calculated decision to waive *Smith* in order to highlight inconsistencies in the stories of Tina and Sara Ames.[36] This decision by Counsel was based on an agreement with the State that all of the State's witnesses would remain available to be recalled to the stand if necessary.[37] Burns has failed to show Counsel's strategy was objectively unreasonable.

*Counsel's Characterization of Tina and Sara as "Victims"*

In *Jackson v. State,* we held that the State should not use the term "victim" in cases where the commission of a crime is in dispute.[38] In *Mason v. State,* this Court clarified the issue, holding that use of the term "victim" in an unlawful sexual contact case was only objectionable where consent is at issue.[39] More recently, in *State v. Pierce,* the Superior Court applied *Jack-*

**28.** *Smith v. State,* 669 A.2d 1, 6 (Del.1995) (quoting *Keys v. State,* 337 A.2d 18, 23 (Del. 1975)).

**29.** *Hatcher v. State,* 337 A.2d 30, 32 (Del. 1975).

**30.** *Ray v. State,* 587 A.2d 439, 443 (Del.1991).

**31.** 11 *Del. C.* § 3507(b).

**32.** *Smith,* 669 A.2d at 8.

**33.** Appendix to Appellant's Opening Brief at A–9.

**34.** *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

**35.** *Archy v. State,* 2011 WL 4000994, at *6 (Del. Sept. 8, 2011) (quoting *Bellmore v. State,* 602 N.E.2d 111, 123 (Ind.1992)).

**36.** Appendix to Appellant's Opening Brief at A–16.

**37.** Appendix to Appellant's Opening Brief at A–9.

**38.** *Jackson v. State,* 600 A.2d 21, 24 (Del. 1991).

**39.** *Mason v. State,* 1997 WL 90780, at *2 (Del. Feb. 25, 1997).

*son* and found that the term "victim" was not inappropriate, as there was evidence that the victim had bruises and other injuries.[40]

■ At trial, Counsel referred to Tina and Sara Ames as "victims." After the first time Counsel used this term, he clarified that the girls were "alleged victims." During the testimony of Officer Giddings, Counsel allowed Officer Giddings to refer to the girls as "victims." While questioning another witness, Counsel himself referred to the girls as "victims." Later, Counsel asked the witness to read from his notes where the term "victims" was used multiple times. Burns contends that by using the term "victim" himself, and by allowing others to use the term, Counsel's conduct was objectively unreasonable and prejudicial to Burns' case.

We need not reach the question of whether Counsel's conduct was objectively unreasonable, as Burns has failed to demonstrate prejudice. Despite Counsel referring to *both* girls as victims, the jury did not convict Burns of the charges involving Tina. In our decision on direct appeal, we found:

> The strongest evidence that the jury was not prejudiced was its final verdict: the jury convicted Burns on only some of the charges against him. Had the jurors been prejudiced against Burns, or misled as to the nature of the allegations against him, they would likely not have acquitted him of the Second Degree Rape and Second Degree Unlawful Sexual Contact charges in relation to Tina Ames. Therefore, the second *Taylor* fac-

tor strongly weighs in favor of the State.[41]

Although in the direct appeal we were considering the potential for prejudice resulting from a courtroom outburst by a witness, that reasoning applies equally to the present claim. Burns was acquitted of some of the charges in relation to Tina Ames. This weighs heavily against Burns' assertion that he had been prejudiced by Counsel's use of the term "victim" in relation to Tina Ames. Petitioner has the burden of demonstrating prejudice; it was not an abuse of discretion for the Superior Court to find that Burns had not met this burden.

### Counsel's Failure to Object During the State's Summation

■ Burns claims that the prosecutor improperly implied personal superior knowledge of the evidence during the summation and that Counsel should have objected. "[P]rosecutors occupy a unique role in the adversary system because their 'duty is to seek justice, not merely convictions.'"[42] Because of this unique role, "[t]he prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."[43] We recently held:

> [T]he prosecutor is allowed to argue all legitimate inferences of the defendant's guilt that follow from the evidence. The inferences, however, must flow from the evidence presented. Conceptually, improper vouching occurs when the prosecutor implies personal superior knowl-

40. *State v. Pierce*, 2008 WL 282278, at *2 (Del.Super.Ct.2008).

41. *Burns v. State*, 968 A.2d 1012, 1020 (Del. 2009).

42. *Trump v. State*, 753 A.2d 963, 967 (Del. 2000) (quoting *Brokenbrough v. State*, 522 A.2d 851, 855 (Del.1987)).

43. *Id.* (quoting ABA Standards for Criminal Justice § 3–5.8(b) (3d ed.1993)).

edge, beyond what is logically inferred from the evidence at trial.[44]

A prosecutor may make logical implications based upon the evidence presented at trial.[45] In *Kirkley v. State*, we found that when a prosecutor announced to the jury that, "[t]he State of Delaware is bringing this charge because it is exactly what Buckey Kirkley did," such a statement was improper.[46] We held, "by claiming that the State brought the charge because Kirkley committed attempted robbery, the prosecutor implies he has personal knowledge that Kirkley is guilty." [47]

In the present case, the prosecutor cautioned the jury during the course of the State's summation. The prosecutor explained that "what the attorneys say is not evidence" and if what the prosecutor says is different from the recollection of the jurors, "it is [the juror's] recollection that matters." The prosecutor went on to say:

> [T]he person who is responsible for these things can be held accountable. And the only person responsible for the hurt and the pain and the emotional trauma that you witnessed in this courtroom, the only person responsible for that is the defendant, Robert Burns.
>
> . . . .
>
> . . . . Those girls didn't choose to be here. They didn't choose to make this happen. He did it (indicating Mr. Burns). He tore the family apart. Not them. He betrayed the trust of those children and his entire family.
>
> . . . .
>
> Ladies and gentleman, he did this. Hold him responsible.[48]

Counsel explained that he did not object as the prosecutor did not use the pronoun "I" nor did the prosecutor "clearly express a personal belief of [Defendant's] guilt."

Unlike the statements made in *Kirkley*, here, the prosecutor's statements did not imply a personal superior knowledge of the evidence. In *Kirkley*, the prosecutor intimated that the reason the State had brought the charges against the defendant was that the defendant was in fact guilty. There the prosecutor improperly vouched for defendant's guilt. Here, the prosecutor made references to Burns' guilt, but she did not imply that she had superior personal knowledge. Her assertion is merely a logical inference that could have been made based on the evidence. By simply saying, "he did this," the prosecutor did not assert personal superior knowledge. The prosecutor drew an inference that could have logically resulted from the evidence. The prosecutor also couched his statements by saying, "what the attorneys say is not evidence." This warning bolsters the conclusion that the prosecutor did not imply personal superior knowledge. Accordingly, Counsel's decision to not object was not objectively unreasonable.

### Cumulative Effect

Burns contends that even if the individual conduct of Counsel does not amount to ineffective assistance of counsel, the cumulative effect of Counsel's errors warrants reversal.

▮▮▮▮▮▮ "Under the plain error standard of review, the error complained of

---

**44.** *Kirkley v. State*, 41 A.3d 372, 377 (Del. 2012) (footnote omitted) (citing *Daniels v. State*, 859 A.2d 1008, 1011 (Del.2004); *White v. State*, 816 A.2d 776, 779 (Del.2003)).

**45.** *Cf. Hughes v. State*, 437 A.2d 559, 569 (Del.1981) (reversing a conviction where the prosecutor's summation "clearly misstated the evidence").

**46.** *Kirkley*, 41 A.3d at 377.

**47.** *Id.* at 378.

**48.** Appendix to Appellant's Opening Brief at A–12.

must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." [49] "Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice." [50]

We held in *Michael v. State* that "where there are several errors in a trial, a reviewing court must also weigh the cumulative impact to determine whether there was plain error from an overall perspective." [51] In *State v. Savage*, the Superior Court found that "some trials are so inundated with errors that the only recourse is to begin anew." [52] In *Savage*, the prosecutor had misrepresented evidence, vouched for the credibility of a witness, and speculated about defendant's involvement in the crime, but he failed to refer to any evidence supporting those claims.[53] The trial judge committed additional errors while giving cautionary instructions and improperly allowed the presentation of evidence of the defendant's prior bad acts.[54]

The Superior Court found that the alleged cumulative error cited by Burns does not justify relief. The court found that Burns' strongest claim is that Counsel acted improperly by using the term "victim" at trial. As discussed *supra*, Burns was not prejudiced by the use of this term. Burns' claim of cumulative error is without merit.

---

49. *Turner v. State*, 5 A.3d 612, 615 (Del.2010) (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986)).

50. *Id.* (quoting *Wainwright*, 504 A.2d at 1100).

51. *Michael v. State*, 529 A.2d 752, 764 (Del. 1987).

---

### Conclusion

The judgment of the Superior Court is **AFFIRMED**.

---

52. *State v. Savage*, 2002 WL 187510, at *8 (Del.Super.Ct.2002).

