# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
)
)
v. ) ID. No. 1212005871A
)
)
JOEQWELL COVERDALE )

Submitted: October 31, 2017
Decided: January 2, 2018

## MEMORANDUM OPINION AND ORDER

*Upon Defendant, Joeqwell Coverdale's, Motion for Postconviction Relief,*
**DENIED.**

Andrew J. Vella, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for the State of Delaware.

Benjamin S. Gifford IV, Esquire, Wilmington, Delaware, for Defendant Joeqwell Coverdale.

**WALLACE, J.**

## I. INTRODUCTION

Before the Court is Defendant Joeqwell Coverdale's Motion for Postconviction Relief. Coverdale, who was sentenced to an aggregate mandatory period of incarceration of twenty-one years, asks the Court to set aside one of his judgments of conviction; that is, for one count of first degree robbery. For the reasons stated below, Coverdale's application is **DENIED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

One December evening in 2012, Mohammed Kayyali ("Mohammed"), his brother Abdullah Kayyali ("Abdullah"), and their friends, Emilio Laury and Annette Torregrossa, were smoking marijuana in a vehicle driven by Mohammed.[1] At one point, the four drove to Fenwick Apartments in Elsmere, Delaware, to purchase more marijuana.[2]

Upon arrival, Mohammed parked the car, and Laury, who was acquainted with the dealer from whom they wished to purchase more marijuana, exited the car.[3] The Kayyali brothers and Torregrossa remained in the car.[4] Three men then approached their vehicle: the first, later identified as Coverdale, held a gun against

---

[1]   *Coverdale v. State*, 2015 WL 2329156, at *1 (Del. May 12, 2015).

[2]   *Id.*

[3]   *Id.*

[4]   *Id.*

-2-

Mohammed's head; the second opened the rear doors and robbed the passengers in the back seat, Abdullah and Torregrossa; and the third kept watch.[5] The three robbers stole wallets, money, cell phones, and jewelry from the victims, as well as the keys to the vehicle and the recently-purchased marijuana from Laury upon his return to the vehicle.[6] The robbers searched the trunk of the car before Coverdale returned the keys to Mohammed and instructed him to leave.[7] Mohammed then asked for his wallet back.[8] Coverdale complied, but opened the wallet first and read the address from Mohammed's license, saying, "I know where you live at, I seen your address and I know exactly where that address is . . . [D]on't tell the cops or we'll get you."[9]

The victims then returned to Abdullah's house, where they spotted Officer John Mitchell of the Elsmere Police Department and reported the incident.[10] Officer Mitchell interviewed the victims first at Abdullah's house and again at the police station.[11] Officer Mitchell composed two photographic line-ups based on the

---

[5]     *Id.*

[6]     *Id.*

[7]     *Id.*

[8]     *Id.*

[9]     *Id.*

[10]    *Id.*

[11]    *Id.*

-3-

victims' description of the robbers.[12] Coverdale was identified in the line-ups by Mohammed, Abdullah, and Laury.[13] Officer Mitchell then executed a search warrant on Coverdale's apartment, where he discovered the victims' four stolen cell phones.[14] Coverdale was arrested later that day.

Coverdale was indicted for four counts of Robbery in the First Degree, four counts of Possession of a Firearm During a Commission of a Felony, one count of Conspiracy in the Second Degree, and three counts of Possession of a Firearm by a Person Prohibited.[15]

At trial, the State entered a *nolle prosequi* on two counts of Possession of a Firearm by a Person Prohibited, and the third was severed.[16] The jury found Coverdale guilty of three counts of Robbery in the First Degree, one count of

---

[12]    *Id.*

[13]    *Id.*

[14]    *Id.*

[15]    Indictment, *State v. Joeqwell Coverdale*, ID No. 1212005871A (Del. Super. Ct. Mar. 4, 2013).

[16]    Def.'s Am. Mot. for Postconviction Relief, at 1–2 (hereinafter "Def.'s Mot.").

Robbery in the Second Degree,[17] and four counts of Possession of a Firearm During a Commission of a Felony.[18]

Sentencing took place in June 2014. For the first count of Robbery in the First Degree, Coverdale was sentenced to ten years at supervision Level V, suspended after three years for two years and six months at Level IV, suspended after six months for two years at Level III.[19] For each of the other two counts of Robbery in the First Degree, Coverdale was sentenced to three years at supervision Level V.[20] For the Robbery in the Second Degree conviction, Coverdale was sentenced to five years at supervision Level V, suspended immediately for two years at Level III.[21] For each of the four counts of Possession of a Firearm During a Commission of a Felony, Coverdale was sentenced for three years at Level V.[22] Finally, for the count

---

[17] The Court had granted Coverdale's mid-trial request for a judgment of acquittal on the original charge of first degree robbery in Count VII (that naming Laury as a victim) and, therefore, the jury was instructed on robbery second degree only for that count. App. to Def.'s Mot. at A122; *id.* at 137.

[18] Verdict Form, *State v. Joeqwell Coverdale*, ID No. 1212005871A (Del. Super. Ct. Feb. 14, 2014).

[19] Sentencing Order, *State v. Joeqwell Coverdale*, ID No. 1212005871A (Del. Super. Ct. June 13, 2014).

[20] *Id.*

[21] *Id.*

[22] *Id.*

of Conspiracy in the Second Degree, Coverdale was sentenced to two years at supervision Level V, suspended immediately for one year of Level II probation.[23]

Coverdale appealed through trial counsel. The Delaware Supreme Court affirmed Coverdale's convictions.[24]

Coverdale then filed a *pro se* Motion for Postconviction Relief and an amended motion through assigned postconviction counsel.[25] Trial counsel filed an affidavit in response to the motion.[26] And the State has filed its response opposing Coverdale's motion.[27]

## III.  DISCUSSION

### A.  SUPERIOR COURT RULE 61(I)(3) IS NOT A PROCEDURAL BAR TO COVERDALE'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.

---

[23]  *Id.*

[24]  *Coverdale*, 2015 WL 2329156, at *3.

[25]  Def.'s Mot.

[26]  *See Horne v. State*, 887 A.2d 973, 975 (Del. 2005) ("preferable practice in a case . . . involving a first postconviction motion containing ineffectiveness claims" is "to obtain trial counsel's affidavit in response to the defendant's allegations of ineffective assistance of counsel" because "[w]ithout either an affidavit from trial counsel or an evidentiary hearing on the allegations, trial counsel would have neither an opportunity to be heard, nor the chance to defend himself against such charge of incompetency" and the record upon which the courts must base their review of the reasonableness of counsel's representation would be "incomplete and inadequate").

[27]  State's Resp. to Def.'s Am. Mot. for Postconviction Relief (hereinafter "State's Resp.").

The State first argues that Coverdale's single claim in his postconviction motion is procedurally barred by Superior Court Criminal Rule 61(i)(3), which provides that "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred[.]"[28] But the Delaware Supreme Court and this Court have consistently held the 61(i)(3) bar inapplicable when a defendant "claims ineffective assistance of counsel, which could not have been raised in any direct appeal."[29] Because Coverdale's motion is timely filed and raises an ineffective assistance of counsel claim that could not have been raised during his trial or on direct appeal (where he was represented by trial counsel), it is not procedurally barred by this Court's Rule 61(i)(3).

## B. COVERDALE FAILS TO ESTABLISH A CLAIM FOR INEFFECTIVE ASSISTANCE OF COUNSEL.

Coverdale complains that he was provided ineffective assistance of counsel during his trial. Coverdale contends that his trial counsel's failure to request a specific jury instruction prejudiced him, as the jury would have convicted him of a lesser offense had the instruction been given.

---

[28] SUPER. CT. CRIM. R. 61(i)(3).

[29] *State v. Smith*, 2017 WL 2930930, at *1 (Del. Super. Ct. July 7, 2017).

During jury deliberations, the jury sent a note to the Court asking: "(1) Can there be a third option of [Robbery in the] Second Degree for Count I? (2) If not, can we select not guilty for Count I and guilty for Count II? (3) Can we see the police report for [Torregrossa]?"[30]

The Court stated that it would provide the supplemental jury instruction on second degree robbery for Count I only if the parties so agreed.[31] Trial counsel discussed the option with Coverdale, and reported to the Court that "[Coverdale] d[id] not wish for [counsel] to make a formal application for a lesser-included offense" on Count I.[32] Instead Coverdale – after hearing the jury's note – wished to go all-or-nothing as to Count I. Coverdale now argues that "[t]rial counsel's error in failing to request a jury instruction on a lesser-included offense . . . had a devastating effect on [Coverdale]."[33]

An inmate who claims ineffective assistance of counsel must demonstrate that: (a) his defense counsel's representation fell below an objective standard of reasonableness, and (b) there is a reasonable probability that but for counsel's errors,

---

[30]     Def.'s Mot. at 20 (citing App. to Def.'s Mot. at A141). Torregrossa was the victim named in Count I of the Indictment.

[31]     App. to Def.'s Mot. at A142.

[32]     *Id.* at A142.

[33]     Def.'s Mot. at 21.

the result of the proceeding would have been different.[34] A reasonable probability exists when there "is a probability sufficient to undermine confidence in the outcome."[35]

There is a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance.[36] And there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[37] When evaluating an attorney's performance, a reviewing court must "eliminate the distorting effects of hindsight," "reconstruct the circumstances of counsel's challenged conduct," and "evaluate the conduct from counsel's perspective at the time."[38] "It is not this Court's function to second-guess reasonable trial tactics."[39] For "[e]ven the best criminal defense attorneys would not defend a particular client the same way."[40] And there is, quite simply, a wide range of legitimate decision making that might be

---

[34]     *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *see also Alston v. State*, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).

[35]     *Strickland*, 466 U.S. at 694.

[36]     *See id.* at 689; *Gattis v. State*, 697 A.2d 1174, 1184 (Del. 1997).

[37]     *See Strickland*, 466 U.S. at 689; *Flamer v. State*, 585 A.2d 736, 753-54 (Del. 1990).

[38]     *Strickland*, 466 U.S. at 689.

[39]     *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002).

[40]     *Strickland*, 466 U.S. at 690.

made by a competent attorney.[41] Lastly, an inmate may not rely on conclusory statements that he suffered ineffective assistance; he must instead plead all allegations of prejudice with particularity.[42]

### His Counsel's Performance Was Not Deficient When He Followed Coverdale's Demand to Reject a Supplementary Mid-deliberation Lesser-included Offense Instruction on Count I.

When addressing the issue of lesser-included offense instructions, the Delaware Supreme Court has stated unequivocally that Delaware is a party autonomy jurisdiction.[43] In turn, a trial court does not interfere in the tactics of the parties but must withhold charging on a particular lesser-included offense unless requested by a party.[44] This allows the defendant to exercise or, as here, to waive the "full benefit of the reasonable doubt standard"[45] that a lesser-included offense instruction may promote. Importantly, under the party autonomy approach, the

---

[41] *Id.* at 688-89; *Moore v. Deputy Commissioner(s) of SCI-Huntingdon*, 946 F.2d 236, 246 (3d Cir. 1991) (even if reviewing court would advise another course); *State v. Carter*, 782 N.W.2d 695, 704 (Wis. 2010) ("Indeed, counsel's performance need not be perfect, nor even very good, to be constitutionally adequate.").

[42] *See Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)).

[43] *State v. Brower*, 971 A.2d 102, 110 (Del. 2009) ("We ratify and reaffirm our adherence to the party autonomy rule.").

[44] *Chao v. State*, 604 A.2d 1351, 1358 n.4 (Del. 1992) (*citing Walker v. United States*, 418 F.2d 1116, 1119 (D.C. Cir. 1969) and *Hagans v. State*, 559 A.2d 792, 804 (Md. 1989)).

[45] *Beck v. Alabama*, 447 U.S. 625, 634 (1980).

parties determine whether to ask for and, if so, what offenses it is in their best interest for the jury to consider.

In *State v. Cox,* the Court declared that "the trial court ordinarily should not give a jury instruction on an uncharged lesser-included offense where neither side requests or affirmatively agrees to such instruction."[46] The burden falls on defense counsel to request the instruction; otherwise, the trial court cannot "discount the possibility that such a position [to not seek the instruction] is a tactical decision by defense counsel."[47]

Our Supreme Court has consistently adhered to its holdings that in Delaware the defense should have the ability to, when there is a rational basis in the evidence, request or forego the specific lesser offenses it wishes to have submitted "for it is they who determine trial tactics and presumably act in accordance with a formulated strategy."[48] The decision to waive included offense instructions is one that involves an in-depth discussion of the trial evidence and defense tactics between counsel and client, and the trial court accepts defense counsel's professional statement that waives such instructions.[49]

---

[46]     851 A.2d 1269, 1273 (Del. 2003) (*quoting Hagans,* 559 A.2d at 804).

[47]     *Perkins v. State,* 920 A.2d 391, 399 (Del. 2007).

[48]     *Chao,* 604 A.2d at 1358; *Cox,* 851 A.2d at 1274; *Johnson v. State,* 2007 WL 1238887, at *3 (Del. Apr. 25, 2007).

[49]     *See State v. Wallace,* 475 N.W.2d 197, 200-01 (Iowa 1991).

-11-

This Court has said that the decision "whether to request the instruction [of a lesser included offense] [i]s a matter of trial strategy within the province of defense counsel rather than the defendant."[50] Taking an "all-or-nothing" approach on jury instructions constitutes trial strategy within the province of counsel. Strategic decisions made by trial counsel will be upheld unless the defendant can show them to be objectively unreasonable.[51] The Court, at Coverdale's trial, acknowledged the "benefit to an all-or-nothing option for the defendant," supporting the objective reasonableness of trial counsel's choice here.[52]

And Coverdale's counsel received Coverdale's express endorsement of such an approach.[53] "Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty . . . . From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions[.]"[54] Here, the record reflects that Coverdale and his counsel had "time to confer," and

---

[50]    *Moore v. State*, 2003 WL 1987899, at *2 (Del. Apr. 28, 2003).

[51]    *Pennewell v. State*, 2005 WL 578444, at *1 (Del. Jan. 26, 2005).

[52]    App. to Def.'s Mot. at A142.

[53]    *Id.* at A142.

[54]    *Strickland*, 466 U.S. at 688.

-12-

that Coverdale did not "wish for [his counsel] to make a formal application for a lesser-included offense."[55] Coverdale did not want the jury to have the lesser offense to which it could retreat on Count I. Rather, believing the State had not proven his criminal culpability for first degree robbery, and that the jury was signaling that it had found that to be true, Coverdale wished to seek full acquittal on Count I.

His counsel's choice – given the jury's suggestion it was considering complete acquittal on Count I – was both reasonable strategy and consistent with Coverdale's express instruction. In his capacity as assistant to Coverdale, trial counsel appropriately heeded Coverdale's wishes by rejecting the Court's offer of a supplementary jury instruction on the lesser-included offense.

Coverdale posits a view that would seriously compromise the long-accepted standard for examining a trial attorney's trial behavior. Under Coverdale's construct, an attorney's reasoned and informed strategic act that his or her client expressly instructed him to take would be found to an unprofessional error violative of the Sixth Amendment merely because it didn't work. The Court declines Coverdale's invitation to ignore the *Strickland* standard.[56] Coverdale can hardly

---

[55]    App. to Def.'s Mot. at A142.

[56]    *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."); *Moore,* 946 F.2d at 246-47 ("The most we can say is that from our post-trial position, deprived of course of the feel of the trial courtroom, we think we *might* have

-13-

complain now that his attorney needed to override his express instruction to eschew the lesser or be deemed to have provided constitutionally deficient representation simply because the informed and agreed-to tactic chosen failed.

Because Coverdale fails to show that trial counsel's decision to decline the supplementary mid-deliberation lesser-included offense instruction was objectively unreasonable, and because trial counsel acted in accordance with Coverdale's wishes when rejecting the instruction, this Court must uphold counsel's strategic decision.[57] There is always a strong presumption that counsel's representation was reasonable,[58] and "[i]t is not this Court's function to second-guess reasonable trial tactics."[59] So, on this basis alone, Coverdale's claim of ineffective assistance fails.[60]

---

recommended something else at the trial if we had been there. Under *Strickland* that is not a sufficient basis to find the counsel to have been ineffective. We can find a Sixth Amendment violation only if we give mere lip service to *Strickland*.").

[57]     *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014) ("If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options,' that decision is 'virtually unchallengeable'…").

[58]     *See Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[59]     *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002); *Burns v. State*, 76 A.3d 780, 788 (Del. 2013) ("It should be noted that even evidence of '[i]solated poor strategy, inexperience, or bad tactics do[es] not necessarily amount to ineffective assistance of counsel.'").

[60]     *Strickland*, 466 U.S. at 687 (to succeed on his claim of ineffective assistance of counsel, an inmate must satisfy both prongs of the *Strickland* test); *State v. McGlotten*, 2011 WL 987534, at *4 (Del. Super. Ct. Mar. 21, 2011) ("If a defendant cannot establish both [*Strickland*] prongs, then the ineffective assistance of counsel claim fails.").

-14-

## IV.  CONCLUSION

Coverdale has not met his burden of showing objective unreasonableness of his trial counsel's conduct.  Coverdale's Motion for Postconviction Relief is hereby **DENIED**.

**IT IS SO ORDERED.**

**Paul R. Wallace, Judge**

Original to Prothonotary

cc:  Joeqwell Coverdale, *pro se*
    Investigative Services Office