IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      :

                     :     ID# 1503013837A

      v.            :

                     :

TYRONE BUSSEY,        :


Submitted: June 7, 2019
Decided: June 26, 2019


*Defendant's Motion for Post Conviction Relief - **DENIED***


**MEMORANDUM OPINION**


Natalie S. Woloshin, Esquire, Woloshin, Lynch & Associates, P.A., 3200 Concord Pike, Wilmington, DE 19803; Attorney for Defendant.

Casey L. Ewart, Esquire, Department of Justice, 114 E. Market Street, Georgetown, DE 19947; Attorney for the State.


**KARSNITZ, J.**

If one were to use a baseball analogy, a Rule 61 petition is the bottom of the ninth, the home team down by three runs, no one on base, two outs and two strikes on the hitter. The Defendant already has been charged, tried, convicted and on direct appeal his convictions affirmed.

Superior Court Criminal Rule 61 ("Rule 61") petitions face significant procedural, including timing, hurdles.[1] Here, however, the Defendant and the State are in accord that no procedural issues bar review of the substance of Defendant's claims.

The Delaware Supreme Court in *Albury v. State*[2] adopted the standard for analyzing Rule 61 claims of ineffective assistance of counsel required in *Strickland v. Washington.*[3] *Strickland* mandated a showing that "...counsel's representation fell below an objective standard of reasonableness...", and "... that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[4]

---

[1] See Superior Court Rule 61(I); *Ayers v. State*, 802 A2d 278 (Del. 2002).

[2] 551 A.2d 53 (Del. 1988). ("*Albury*")

[3] 466 U.S.. 668 (1984).

[4] *Albury*, 551 A.2d at 58 quoting *Strickland.*

2

When an appellate court examines the representation of counsel pursuant to the first prong of the *Strickland* test, that review is subject to a strong presumption that counsel's conduct was professionally reasonable. That presumption is designed to eliminate the distorting effects of hindsight.[5]

In my opinion defense counsel's work met the *Strickland* standard. In addition I also am of the opinion that the claimed deficient conduct, if altered as described by defendant, would not have produced a different result. The evidence presented at trial, including the recorded conversations between Defendant and his inamorata while Defendant was incarcerated, was of sufficient strength that even if one assumed trial counsel erred, the result would have been the same. I deny Defendant's Motion for Post-Conviction Relief.

## FACTS

Defendant's motion raises one issue making a full recitation of facts unnecessary. I will try to keep it short. Defendant was arrested in March of 2015 following an altercation with Kim Shelton. Allegations included that Defendant threatened Shelton and her teenage son, W.P., with a gun, pistol-whipped Shelton, and dragged Shelton from her front to her back yard. W.P. ran to a neighbor

---

[5] *Albury*, at 59.

3

asking that she call emergency services for help. The Defendant fled the area, but was eventually captured by police authorities. Police found a loaded gun in Shelton's back yard. Defendant was charged with 13 offenses including two counts of aggravated menacing, two counts of possession of a firearm during the commission of a felony, possession of both a firearm and ammunition by a person prohibited, assault 3rd, two counts of terroristic threatening, and four counts of endangering the welfare of a child.

Ms. Shelton recanted her statements to police, including claiming she "planted" the gun by her back porch because she knew Defendant was prohibited from possessing weapons and ammunition, and she was trying to "...get him in trouble".

Prosecution authorities discovered Defendant telephoned Shelton while he was in prison, in violation of his "no contact" order.[6] The conversations were recorded by the prison's telephone recording system, and are quite graphic. As part of the Rule 61 process I held oral argument as to Defendant's claim and, at the invitation of counsel, listened to the taped phone calls. They show a scheme between Defendant and Shelton to "revise" her earlier statements to police.

---

[6] He was charged with several counts of violating the order.

4

Shelton told a version of events at Defendant's trial substantially different from what she told police the day they occurred. To counter the change the prosecution sought and was granted permission to have the two main investigating police officers testify as to what Shelton told them pursuant to the requirements of 11 _Del. C._ §3507. The officers who testified were Corporal Haddock and Corporal Kansak of the Laurel Police Department. Officer Haddock spoke with Shelton at the crime scene, and Officer Kansak spoke to Shelton later that night at the hospital.

Defendant was convicted on all counts but the possession by a person prohibited charges. The latter had been severed and were ultimately dismissed. Defendant's convictions were affirmed on appeal.*

## ANALYSIS

Defendant brings one claim, that is, trial counsel was ineffective by failing to challenge the police officers' Section 3507 recitation of what Shelton said. In order for a statement to be admissible under Section 3507 the declarant must first testify in direct examination that the prior statement was voluntary, and the witness must be asked if the statement was true.[7] The statement must be

*_Bussey v. State_, 159A.3d 713, 2017 WL1215763 (Del. 2017) (TABLE)

---

[7] _Burns v. State_, 76 A.3d 780, 788 (Del. 2013).

offered no later than at the conclusion of the declarant's direct examination.[8] Here the statements were offered at a pause in Ms. Shelton's direct examination.

Our Supreme Court has also determined that "...it is the statement of the declarant that is being admitted, not an interpretive narrative of the person who heard the statement."[9] The favored way to present Section 3507 testimony is through a written or recorded statement of the declarant.[10]

Neither investigating officer took either a written or recorded statement of Shelton. The officers relied upon their reports to testify to what Shelton told them. I find it crucial that Shelton in her direct testimony confirmed what the officers' said she said with one notable exception. The exception is that Shelton denied Defendant ever threatened her son, W.P.

The major difference in Shelton's trial testimony and her statement concerned the firearm. At trial Shelton claimed Defendant never had a firearm, and she told police he did to "get him in trouble". The version that took the firearm out of Defendant's control dovetailed exactly with the version discussed by Defendant and Shelton in the prison phone calls. The stench of mendacity was

---

[8] *Id.*

[9] *Morgan v. State*, 922 A.2d 395, 399 (Del. 2007)

[10] *Hassan-El v. State*, 911 A.2d 385, 398 (Del. 2006).

6

overwhelming.

Trial counsel's strategy was not to attack the Section 3507 statements; Shelton admitted they were made in the same language as described by the police officers. The strategy was to try and show the Section 3507 statements were false when made at a time when Shelton was angry with Defendant. The strategy was undermined to a large extent by proof that Defendant and Shelton concocted the version in prison calls.

In his briefs Defendant spends considerable effort to show the shortcomings of the police officers' documenting of the Section 3507 statements, including the claim that the officers' reports were prepared months after the incident. The effort in many cases may have been worthwhile, but not here. In her direct examination Shelton agreed (with the exception of the portion of the statement concerning threats to W.P.) that the police accurately testified as to what she said. When asked before and after the Section 3507 testimony Shelton said she agreed she had told the officers what they said she had. The trial strategy was to show what Shelton said to the police officers the night of the crimes was a lie, and what she said at trial was the truth. But there was no dispute about what she said to the police officers (with the one exception).

The exception may have been of concern to me, but my concern was allayed by the testimony and Section 3507 statement of W.P. At trial W.P. remembered very little. In his Section 3507 statement, which is not challenged here, he specifically declared that Defendant threatened him with a gun.

"A decision made in pursuit of reasonable trial strategy does not constitute ineffective assistance of counsel".[11] Defendant's conduct including the prison calls made counsel's job much more difficult. However, in my view the strategy was reasonable given all the facts of the case.

In addition I am of the view that a Section 3507 challenge would not have succeeded. The method of documenting Shelton's statement left much to be desired. In the ultimate analysis the police officers got it mostly correct, according to Shelton. What she claimed was wrong, her son contradicted in his Section 3507 statement. Coupled with the phone call collusion the Section 3507 statements were properly admitted. In my view they would have been admitted even over a defense objection. I find it is highly unlikely the result at trial would have changed.

---

[11] *Ruffin v. State*, 2019 WL 719038, *2 (Del. Feb. 19, 2019).

8

The only claim of ineffective assistance of counsel is unfounded under both of *Strickland's* prongs.  The motion is DENIED.