## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | Case No. 1801002038 |
| | ) | |
| DONOVAN KENT, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: April 3, 2024[1]
Decided: July 31, 2024

## <u>ORDER</u>

Upon consideration of Defendant Donovan Kent's Amended Motion for Postconviction Relief, Superior Court Criminal Rule 61, statutory and decisional law, and the entire record in this case, **IT APPEARS THAT:**

1.       On March 12, 2018, Kent was indicted by a grand jury as follows: (1) Rape Second Degree, two counts; (2) Unlawful Sexual Contact First Degree, three counts; and (3) Continuous Sexual Abuse of a Child.[2]

2.       On December 7, 2018, a Superior Court jury found Kent guilty of all counts of Unlawful Sexual Contact and Continuous Sexual Abuse of a Child.[3]  As

---

[1] D.I. 89.
[2] D.I. 2.
[3] D.I. 21.

to the two counts of Rape Second Degree, the jury found Kent guilty of the lesser-included offense of Attempted Rape Second Degree.[4]

3.      On March 7, 2019, Kent's trial counsel ("Trial Counsel") filed a Motion for Judgment of Acquittal and a Motion for New Trial with this Court.[5]  Both motions were denied.

4.      On August 14, 2020, the Court sentenced Kent to a total of 29 years at Level V unsuspended.[6]  On November 3, 2021, the Delaware Supreme Court affirmed Kent's convictions on direct appeal.[7]

5.      Kent timely filed his first motion for postconviction relief *pro se* and sought appointment of counsel.[8]  The Court granted Kent's request for postconviction counsel ("Postconviction Counsel")[9] and Postconviction Counsel filed an Amended Motion for Postconviction Relief[10] (the "Motion").

6.      In his Motion, Kent raised two ineffective assistance of counsel claims. Kent's Trial Counsel and the State responded to Kent's arguments,[11] and Kent filed

---

[4] *Id.*

[5] D.I. 33 and 34.

[6] D.I. 44.

[7] *Kent v. State*, 262 A.3d 1065 (Del. 2021) (TABLE).

[8] D.I. 60 and 61.

[9] D.I. 64.

[10] D.I. 72.  After the Motion was filed, the case was specially reassigned from the trial judge to this judge for all purposes until final disposition.  D.I. 69.

[11] D.I. 76 and 78.

a reply in further support of his claim.[12]  Oral argument and an evidentiary hearing[13] were held subsequently.

7.    Before addressing the merits of any claim for postconviction relief, this Court must determine whether the Motion is barred procedurally under Superior Court Criminal Rule 61.[14]  A motion for postconviction relief may be barred for timeliness and repetition, among other things.  A Rule 61 motion is untimely if it is filed more than one year after final judgment of conviction.[15]  A defendant is also barred from filing successive motions for relief under the Rule.[16]  Rule 61 further prohibits motions based on grounds for relief that were not asserted in the proceedings leading up to the judgment of conviction, unless the movant demonstrates "[c]ause for relief from the procedural default" and "[p]rejudice from violation of the movant's rights."[17]  Finally, the Rule bars consideration for relief on grounds that previously were adjudicated in the case.[18]

---

[12] D.I. 80.
[13] The State and Postconviction Counsel initially advised the Court that an evidentiary hearing was not necessary (D.I. 81), however, during oral argument, issues arose that necessitated holding an evidentiary hearing.
[14] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[15] Super. Ct. Crim. R. 61(i)(1).
[16] *Id.* at 61(i)(2); *See id.* at 61(d)(2)(i)-(ii) (regarding the pleading requirements for successive motions).
[17] *Id*. at 61(i)(3)(A)-(B).
[18] *Id*. at 61(i)(4).

3

8. Kent's Motion was filed less than one year after his sentence became final and therefore is timely. Because this is Kent's first motion for postconviction relief it is not barred as repetitive. Lastly, the Motion alleges ineffective assistance of counsel, which could not have been raised at any earlier stage of the proceedings;[19] ineffective assistance claims may not be raised until postconviction proceedings.[20] Accordingly, the Motion will be decided on the merits.

9. When a claim of ineffective assistance of counsel is raised, the two-prong test in *Strickland v. Washington* governs the analysis.[21] To prevail, a defendant must demonstrate that: (i) trial counsel's representation fell below an objective standard of reasonableness; and (ii) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.[22] There is a strong presumption that counsel's representation was reasonable.[23] In addition, it is not this Court's function to second-guess reasonable tactics engaged by trial counsel.[24] An attorney's strategic or tactical choices made after a thorough

---

[19] *Whittle v. State,* 138 A.3d 1149 (Del. 2016); *State v. Evan-Mayes,* 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).
[20] *See, e.g., Malloy v. State,* 16 A.3d 938, 2011 WL 1135107, at *2 (Del. Mar. 28, 2011) (TABLE).
[21] *Strickland v. Washington*, 466 U.S. 668, (1984); *see also*, *Neal v. State*, 80 A.3d 935, 941-42 (Del. 2013).
[22] *Id*.
[23] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[24] *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Apr. 1, 2002).

4

investigation or a reasonable decision that makes particular investigations unnecessary are virtually unchallengeable.[25]

10.     Kent first contends that it was unreasonable for Trial Counsel to attempt to impeach the victim's mother, Jessica Hepner, with testimony from Cathy Hudgins because Trial Counsel failed to investigate Hudgins's "flaws."[26]  Second, Kent argues Trial Counsel failed to move for acquittal on his Continuous Sexual Abuse of a Child charge.[27]

11.     As to the improper impeachment allegation, at oral argument, Kent admits that impeaching the credibility of Hepner was a legitimate purpose but argues Trial Counsel failed to investigate Hudgins's "flaws."  Kent contends these "flaws" arose during Hudgins's cross-examination, which included a police report contradicting Hudgins's testimony and her shoplifting convictions.[28]

12.     On cross-examination, the State asked Hudgins about her two shoplifting convictions and whether Kent was "around a lot" when she and her children lived in a motel.[29]  Hudgins truthfully answered the former question, but not the latter.  The State then impeached Hudgins with a police report in which she

---

[25] *Strickland*, 466 U.S. at 690; *Green v. State*, 238 A.3d 160, 174 (Del. 2020).
[26] D.I. 80 at 2.
[27] D.I. 73 at 45-47.
[28] D.I. 89 at 24:4-10.
[29] A511:17-19.

told a detective that Kent "used to be around" when she lived at the motel.[30] Hudgins continued to deny making this statement and accused the police officer of lying.[31]

13. In his affidavit and at the evidentiary hearing, Trial Counsel admitted to being ineffective. Trial Counsel, however, also testified that given the state of the evidence against Kent, his strategy was to establish an ulterior motive for Hepner to fabricate allegations against Kent and argue for "lesser-includeds."[32] Then, Trial Counsel planned to argue to the jury that Hepner's ulterior motive is a reason to disbelieve the State's case.[33]

14. Trial Counsel testified that the day before trial, he received the impeachment information from the State. The email advised that in 2017 Hepner told a police detective of another victim ("M").[34] Hepner alleged that M's mother, Hudgins, told Hepner that Kent also inappropriately touched M.[35] M was interviewed and did not make any disclosures, and Hudgins told the police detective that she never made this statement to Hepner.[36] Trial Counsel, then directed his investigator to confirm Hudgins's potential impeachment testimony, which the

---

[30] A512:5-6
[31] A512:10-17.
[32] D.I. 89 at 5:15-20, 6:8-22, 30:4-13, and 33:14-18.
[33] D.I. 89 at 23:22-24:2.
[34] D.I. 89, Def. Ex. 1.
[35] *Id*.
[36] *Id*.

investigator did.[37] Trial Counsel further admitted he considered the implications of calling Hudgins as a witness and established on the record, at sidebar, he understood those implications but wanted to call Hudgins because it was in his client's best interest.[38] Before a witness takes the stand, Trial Counsel advised that his usual protocol is to speak to the witness at the courthouse. In doing so, he and his investigator had an opportunity to observe Hudgins's demeanor.[39] The record reflects Trial Counsel spoke with Hudgins before she testified, and thereafter, the State advised Trial Counsel of Hudgins's two shoplifting convictions.[40] At trial, Hudgins provided the expected impeachment testimony.[41]

15.    When determining whether Trial Counsel's strategy was reasonable, the Court must "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[42] Judicial scrutiny of counsel's performance must

---

[37] D.I. 89 at 33:19-23, 34:19-21, 35:23-36:5, and Def. Ex. 2.
[38] D.I. 89 at 27:2-28:2. At sidebar, Trial Counsel also explained the narrow scope of the planned testimony and adamantly objected to the State's requests to broaden the scope. *See* A200:10-A209:17, A225:14-A231:14, A439:3-A443:23, A501:22-A504:17, A513:1-A514:10, A517:16-A521:4, and A544:15-A549:6.
[39] D.I. 89 at 42:9-19 and 43:4-44:9.
[40] A504:15-A505:18, A506:11-17.
[41] D.I. 89 at 37:22-38:14.
[42] *Strickland*, 466 U.S. at 689.

be highly deferential and may not second-guess counsel's assistance after conviction or adverse sentence.[43]

16.   Despite the "flaws" that arose from Trial Counsel's strategy, there was evidence of a reasonable strategy.  Also, one of the "flaws" was the result of Hudgins perjuring herself on cross-examination.  Accordingly, Trial Counsel then abandoned his trial strategy.[44]  Although Trial Counsel admitted in hindsight, that he should have conducted a more thorough investigation of Hudgins and her testimony, as noted above, hindsight is not the standard to determine whether an attorney's representation fell below the objective standard.[45]  Moreover, Trial Counsel testified that he followed his usual investigation protocol.[46]

17.   Kent has failed to overcome the strong presumption that Trial Counsel acted reasonably,[47] and therefore, Kent's ineffective assistance claim related to Hudgins's impeachment must fail.  Because the Court concludes that Trial Counsel's representation of Kent was within the wide range of reasonable professional

---

[43] *Id.*
[44] D.I. 89 at 24:13-17.
[45] *See Strickland*, 466 U.S. at 669.
[46] Separately, Trial Counsel's strategy seemingly benefited Kent, particularly resulting in lesser-included charges for the two most serious offenses.
[47] *Burns v. State*, 76 A.3d 780, 788 (Del. 2013) ("Under *Strickland*, the strategic decisions made by counsel are entitled to a strong presumption of reasonableness.").

8

assistance, the Court need not address Kent's claim that his counsel's alleged deficiencies, deprived Kent of a fair trial.[48]

18.     Next, Kent contends Trial Counsel failed to move for a judgment of acquittal for the Continuous Sexual Abuse of a Child charge.  Focusing on the recurring access element, at oral argument, Kent asserted there was no testimony establishing Kent's recurring access to the victim; and if Trial Counsel moved for acquittal, there was a reasonable probability that the motion would have been granted.

19.     The Delaware Supreme Court in resolving Kent's direct appeal reviewed the sufficiency of the evidence under a plain error standard and found no error.  Even under a less deferential standard of review, the State offered testimony that: Kent sexually abused the victim "more than three times" at multiple different locations, including her aunt's house and her own residence;[49]  Hepner testified that Kent lived with the victim's aunt, prior to him moving in with Hepner and her

---

[48] *Green v. State*, 238 A.3d 160, 185 (Del. 2020) (citing *Strickland*, 466 U.S. at 687) ("[T]here is no reason for a court deciding an ineffective assistance claim to … address both components of the inquiry if the defendant makes an insufficient showing on one").

[49] D.I. 78 at 11-12.

family;[50] the victim slept at the aunt's house while Kent was living with the aunt;[51] and Hepner and Kent have remained close friends since childhood[52].

20. The decision whether to file a given motion is a strategic decision and a matter of professional judgment. Such a decision will be upheld if it is reasonable.[53] A defendant cannot demonstrate prejudice by trial counsel's failure to file any motion if that motion were likely to fail.[54]

21. Here, there was evidence to support recurring access, it was for the jury to weigh the evidence and credibility of the witnesses. Therefore, Kent's argument on this claim fails to meet the second prong of *Strickland* because he has not demonstrated that, had Trial Counsel moved, it is reasonably probable the trial judge would have granted such a motion. Accordingly, Kent's instant Motion is **DENIED.**


**IT IS SO ORDERED.**


/s/ *Patricia A. Winston*
**Patricia A. Winston, Judge**

---

[50] *Id.*
[51] *Id.*
[52] A174:7-A175:3.
[53] *State v. Potts*, 2023 WL 5664213, at *6 (Del. Super. Aug. 31, 2023) (citing *Pennewell v. State*, 2005 WL 578444, at *1 (Del. Jan. 26, 2005)).
[54] *State v. Potts*, 2023 WL 5664213, at *6 (Del. Super. Aug. 31, 2023) (citing *Poteat v. State*, 2007 WL 2309983, at *1 (Del. Aug. 14, 2007); *Bratcher v. State*, 2008 WL 2475741, at *1 (Del. June 20, 2008)), *aff'd sub nom.*, *Wal-Ikram v. State*, 314 A.3d 1077 (Del. 2024).

Original to Prothonotary (Criminal Division)
Cc:    Amanda Buckworth, Esq., Department of Justice
        Patrick Collins, Esq.
        John Edinger, Esq.
        Donovan Kent, SBI No. 00746136