# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE ) 
                     ) 
       v.                 )       ID No. 1409011585 
                     ) 
GABRIEL PARDO, ) 
                     ) 
       Defendant.       )

Submitted: September 13, 2019
Decided: November 26, 2019

***Upon Defendant's Motion for Postconviction Relief***
**DENIED**

***Upon Motion to Withdraw as Counsel for Petitioner Gabriel Pardo***
**GRANTED**

## MEMORANDUM OPINION

Eric H. Zubrow, Deputy Attorney General, Department of Justice, Wilmington, Delaware.

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, Delaware.

Gabriel Pardo, James T. Vaughn Correctional Center, Smyrna, Delaware.

**Rocanelli, J.**

Defendant Gabriel Pardo ("Defendant") was the driver of a vehicle that struck and killed a bicyclist, Phillip Bishop. Defendant left the scene of the accident without stopping to ascertain whether anyone was injured or killed. Defendant's three young children were passengers in Defendant's vehicle when Defendant struck and killed Mr. Bishop. A grand jury indicted Defendant, charging Defendant with Manslaughter, Leaving the Scene of a Collision Resulting in Death ("LSCRD"), six counts of Endangering the Welfare of a Child, and Reckless Driving. Defendant was represented at trial by Joe Hurley, Esquire ("Trial Counsel"). Following a nine-day bench trial, Defendant was found Guilty of all counts. Defendant timely filed a notice of appeal to the Delaware Supreme Court. The Supreme Court affirmed Defendant's convictions and sentence.[1]

Defendant timely filed a motion for postconviction relief asserting four claims of ineffective assistance of counsel ("Initial Rule 61 Motion") and a motion for appointment of counsel.[2] The Court granted Defendant's motion for appointment of counsel,[3] and Patrick Collins, Esquire ("Rule 61 Counsel") was appointed to

---

[1] *See Pardo v. State*, 160 A.3d 1136 (Del. 2017).

[2] Postconviction relief motions must be filed within one year after the judgment of conviction is final. *See* Super. Ct. Crim. R. 61(i)(1). Defendant filed the Initial Rule 61 Motion on December 15, 2017, within one year after the Delaware Supreme Court affirmed Defendant's convictions on April 26, 2017. Accordingly, Defendant's motion is timely.

[3] This Court found that Defendant was entitled to appointment of counsel pursuant to Superior Court Criminal Rule 61(e) on the grounds that: (1) Defendant's motion was timely; (2) this was Defendant's first motion for postconviction relief; and (3)

1

represent Defendant with respect to Defendant's postconviction claims. Rule 61 Counsel identified no meritorious claims and filed a motion to withdraw pursuant to Superior Court Criminal Rule 61(e)(7), and Defendant filed a response to Rule 61 Counsel's motion to withdraw thereafter. Defendant also filed an amended motion for postconviction relief asserting six additional ineffective assistance of counsel claims, which together with the claims asserted in Defendant's Initial Rule 61 Motion comprise Defendant's "Rule 61 Motion." At the Court's request, Trial Counsel filed an affidavit addressing Defendant's ineffective assistance of counsel claims ("Trial Counsel's Affidavit"). The State opposes Defendant's Rule 61 Motion.

## PROCEDURAL HISTORY

## I. Defendant's Pre-Trial Legal Challenges

Trial Counsel filed several pre-trial motions and memoranda of law that are relevant to Defendant's Rule 61 Motion, including two motions *in limine* which Trial Counsel later withdrew and several challenges to the constitutionality of the LSCRD statute.

---

the motion involves a conviction for Manslaughter, a Class B felony. *See State v. Pardo*, No. 140911585 (Del. Super. Ct. Jan. 11, 2018) (granting Defendant's motion for appointment of postconviction relief counsel).

2

## A.    Defendant's Initial Motions *In Limine*

Trial Counsel's first motion *in limine* ("Alcohol Consumption Motion") sought to exclude evidence showing Defendant had consumed alcohol during the hours leading up to the collision, arguing that evidence of Defendant's pre-collision alcohol consumption was unfairly prejudicial. Trial Counsel's second motion *in limine* ("Toxicology Results Motion") sought to admit into evidence Mr. Bishop's toxicology screen results, which found traces of THC, the principal psychoactive constituent of marijuana.

On the day before trial, Trial Counsel informed the Court that Defendant wished to waive Defendant's right to a jury trial and to opt for a bench trial instead and withdrew both motions *in limine*. With respect to the withdrawal of the Alcohol Consumption Motion, Trial Counsel stated that his concerns regarding the potential prejudicial effects of the evidence were allayed by a judge serving as the finder of fact. With respect to the withdrawal of the Toxicology Results Motion, Trial Counsel concluded, after "considerable research," that Trial Counsel could not effectively argue a correlation between the THC in Mr. Bishop's bloodstream and any actual impairment potentially experienced by Mr. Bishop. In other words, Trial Counsel concluded that Mr. Bishop's toxicology screen results were not relevant to the cause of Mr. Bishop's death.

**B.      Defendant's Challenges to the LSCRD Statute**

In addition to the motions *in limine*, Trial Counsel challenged the constitutionality of the LSCRD charge.  Trial Counsel filed a motion to dismiss the LSCRD charge, arguing that the charge and potential conviction were unconstitutional because the LSCRD statute did not include mental state or *mens rea* as an element of the offense.  In the alternative, Defendant argued that the State should be required to prove Defendant acted intentionally, knowingly, or recklessly pursuant to 11 *Del. C.* § 251(b)[4] because the LSCRD statute did not otherwise include state of mind.  Trial Counsel then filed a memorandum of law requesting a ruling that the State must prove a *mens rea*.  Trial Counsel filed a separate memorandum of law seeking a ruling that the LSCRD statute is a strictly liability statute and is therefore unconstitutional.  Trial Counsel filed additional memoranda of law asking the Court to address the constitutionality of the LSCRD statute and further arguing that the statute requires the State to prove a *mens rea*.

This Court addressed Defendant's challenges to the constitutionality of the LSCRD charge when the Court announced its verdict.  The Court ruled that the LSCRD statute did not require the State to prove a mental state or *mens rea* because the statute appeared in the motor vehicle code and was enacted for the purpose of

---

[4] *See* 11 *Del. C.* § 251(b) ("When the state of mind sufficient to establish an element of an offense is not prescribed by law, that element is established if a person acts intentionally, knowingly or recklessly.").

4

public safety.[5] In addition, the Court found that even if the LSCRD statute required the State to prove a mental state or *mens rea*, the testimony and evidence presented at trial met due process standards because Defendant knew that he was involved in a collision and nevertheless knowingly and intentionally left the scene of the collision.[6] Accordingly, the Court denied Defendant's motion to dismiss.[7]

## II. Defendant's Refusal to Engage in Plea Negotiations

During a pre-trial office conference, the State and Trial Counsel represented to the Court that the State had not extended to Defendant a pre-trial plea offer. The State informed the Court that Defendant, through Trial Counsel, had informed the State that Defendant was unwilling to accept any resolution to the charges that resulted in a felony conviction. In his Responsive Affidavit, Trial Counsel confirms that Defendant would only entertain a misdemeanor plea because Defendant "considered a felony conviction as the 'death knell' of his career."

The Court addressed Defendant in open court regarding Trial Counsel's representations regarding a plea and Defendant's constitutional right to decide how to plead:

> [Trial Counsel], on your behalf has communicated with the State of Delaware, the prosecutors, Mr. Lugg and Mr. Zubrow, that you, the client, would not consider any plea to any charge less than a – more than a misdemeanor offense. In other words, it was [Trial Counsel's]

---

[5] Tr. Verdict 15:2–10, Oct. 2, 2015.

[6] *Id.* at 15:11–17:3.

[7] *Id.*

communication to the State that the State should not even engage in an analysis to offer a plea to you if that plea were to consider anything other than a misdemeanor charge, a felony, that you would not even consider that. I am duty bound to raise this with you now, sir, on the record and in open Court because, like the decision whether or not to waive a trial by jury, which is a decision that must only be made by the defendant himself or herself, the decision how to plead is a decision that can only be made by the defendant. We hope that defendants made that decision in consultation with lawyers, but it is the defendant's decision whether or not, how to plead, whether to plead guilty or not guilty, whether to accept a plea offer that has been extended or to reject that plea. Only the client, the defendant, can make that decision. The lawyer cannot make that decision under the Constitution. So, it's important for you to confirm to me, as the judge who's hearing this case, that it's accurate and correct that you would not even entertain a plea to anything other than a misdemeanor offense, sir, even a felony offense that did not include minimum-mandatory time.[8]

In response, Defendant replied: "That's correct, [Y]our Honor."[9]

The Court found that Defendant made a knowing, intelligent, and voluntary decision to refuse a plea offer to anything other than a misdemeanor conviction.[10]

The State declined to offer a plea to misdemeanor charges.

## III. Trial[11]

At trial, the State presented testimony of numerous witnesses, including Mr. Bishop's co-worker who saw Mr. Bishop leave work by bicycle on the night of the

---

[8] Tr. Trial 12:5–13:6, Sept. 22, 2015.

[9] *Id.* at 13:7.

[10] *Id.* at 13:8–18.

[11] The following facts regarding trial are taken from this Court's November 9, 2015 order denying Defendant's motions for new trial and judgment of acquittal. *See State v. Pardo*, 2015 WL 6945310, at *5–7 (Del. Super. Ct. Nov. 9, 2015) (footnotes omitted).

6

accident; three witnesses who arrived at the scene of the accident; three police officers, including an officer with expertise in accident reconstruction; Defendant's co-worker who had dinner and alcoholic drinks with Defendant on the day of the accident; the individual who served Defendant food and alcoholic drinks before the fatal hit-and-run; an employee from the DNA Unit of the Delaware Division of Forensic Sciences who tested samples taken from the accident scene and Defendant's vehicle; Defendant's ex-wife; and two of Defendant's three young children who were passengers in the motor vehicle driven by Defendant at the time of the accident. Additional evidence was also offered for the Court's consideration by the State, including Mr. Bishop's damaged bicycle, as well as still photographs and video depicting the crime scene and the damage to Defendant's vehicle, as well as autopsy photographs.

Defendant elected to present a defense. Defendant testified as a witness, and also presented the testimony of his ex-wife and the accident reconstruction expert as witnesses (both of whom were re-called by Defendant in his own case-in-chief). Defendant also called three additional witnesses: a private investigator, an individual who works on behalf of Defendant's counsel, and an employee of Del DOT. Additional evidence was also offered for the Court's consideration by Defendant, including still photographs, video, and drawings depicting the roadway crime scene, as well as DELDOT incident reports.

7

In considering the evidence presented, assessing the evidence and the credibility of witness testimony, the Court made findings of fact, in pertinent part, as follows:

- On September 12, 2014, during a period of approximately three and a half hours (from at about 3:30 p.m. until at about 7:00 p.m.), Defendant consumed a meal, several glasses of water, one frozen margarita, part of a second frozen margarita, three beers, and two shots of tequila.

- After consuming the alcoholic beverages, Defendant operated a motor vehicle in New Castle County, Delaware.

- Defendant was "under the influence" of alcohol at the time of the accident.[12]

- When driving upon Brackenville Road in the northbound lane at approximately 8:30 p.m., Defendant's three sons (ages five (5), eight (8), and ten (10)) were in the vehicle.

- Brackenville Road is a two-way roadway. A double yellow line divides the northbound and southbound lanes. There is ample space in both directions to safely maneuver a vehicle within the lane of travel.

---

[12] The Court did not make a legal finding that Defendant was impaired or intoxicated at the time of the accident but rather found that, after consuming 6 to 7 alcoholic drinks within 1.5 to 5 hours prior to the accident, Defendant was "under the influence" of alcohol at the time of the collision, consistent with Delaware statutory law. *See id.* at *5 n.38 (citing 21 *Del. C.* § 4177(c)(11)); *see also* 21 *Del. C.* § 4177(c)(11) ("'While under the influence' shall mean that the person is, because of alcohol . . . , less able than the person would ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of a vehicle."). The Delaware Supreme Court later found that this Court properly considered Defendant's alcohol consumption as it related to Defendant's state of mind. *See Pardo*, 160 A.3d at 1149 ("On this record, we find no abuse of discretion, as the challenged language from Section 231 was an accurate statement of the law that was supported by the facts in evidence.").

Several witnesses described Brackenville Road as dangerous, including Defendant. Defendant was very familiar with the roadway.

- While driving on Brackenville Road, Defendant exceeded the posted speed limit of thirty-five (35) miles per hour.

- Prior to the collision, Defendant's sons expressed concern about Defendant's speed and expressed that Defendant was operating the vehicle in a weaving fashion.

- At approximately 8:30 p.m., Defendant consciously and purposely placed his vehicle over the double yellow line. As such, Defendant was not travelling within his designated lane of travel.

- Mr. Bishop was lawfully riding his bicycle on Brackenville Road in his designated lane of travel—the southbound lane. Mr. Bishop was equipped with appropriate lighting on his bicycle and his person. Among the debris from the collision, Mr. Bishop's illuminated equipment was found.

- Defendant's vehicle and Mr. Bishop's bicycle had a head-on-head collision in the southbound lane of Brackenville Road while Mr. Bishop was travelling southbound in the southbound lane and Defendant was travelling northbound in the southbound lane.

- As a result of the collision, the front of Mr. Bishop's bicycle collapsed while the front wheel twisted. Upon impact, the bicycle flipped onto the hood of Defendant's vehicle, breaking the handlebars and leaving marks across the hood of the vehicle. Upon impact, Mr. Bishop was violently separated from his bicycle and thrown by force into the windshield of Defendant's vehicle in two places—rendering the windshield broken and splintered in a spider-web fashion from two points of impact. After Mr. Bishop smashed into the windshield in two places, Mr. Bishop was thrown over the roof of Defendant's vehicle in full view of the rear seat passenger, Defendant's son, who exclaimed,

9

"Dad you hit someone. You killed a person."[13] The collision caused significant damage to Defendant's vehicle.

- After the collision, Defendant's vehicle drove off the road, leaving tire marks on the unpaved shoulder and dirt path adjacent to the southbound roadway.

- Mr. Bishop's body was further vaulted across the rear hood of the vehicle and came to rest in the path of the vehicle which passed under Mr. Bishop's bruised and broken body on the dirt shoulder of the southbound lane.

- Defendant knew he had been in a collision.

- Defendant did not stop to assess the scene of the collision to determine whether any person was injured or killed.

- After the collision, Defendant drove his vehicle from the unpaved shoulder onto the northbound lane.

- Defendant admitted that his vehicle was not safe to drive after the collision.

- Defendant left the scene of the accident and continued driving approximately three-tenths of a mile to his residence.

- Unlike Defendant who did not stop to render aid to the mortally wounded Mr. Bishop, the first three people who came upon the scene of the accident stopped to ascertain whether someone was hurt. They contacted emergency personnel by dialing 911. Patrick Ritchie first interacted with Mr. Bishop and testified that Mr. Bishop exhaled twice in response to Mr. Ritchie's efforts. By the time Deirdre Ritchie, a nurse, approached Mr. Bishop, Mr. Bishop was still warm but had no

---

[13] This statement was made by Defendant's son Gabe Pardo and was elicited through a previously recorded video statement made by Defendant's son John Pardo pursuant to 11 *Del. C.* § 3507. John Pardo testified during trial. After the State established the requisite legal foundation, the Court admitted John Pardo's previously recorded video statement into evidence.

pulse and was unresponsive. While Deirdre Ritchie stayed by Mr. Bishop's side, Ms. Shannon Athey directed traffic and Patrick Ritchie briefly left the scene to summon help.

- Upon arrival, New Castle County Police Department officers determined that Mr. Bishop was deceased and therefore no life-saving measures were taken.

- Mr. Bishop died from blunt force trauma inflicted upon him by Defendant's vehicle.

- Upon returning safely to his home, Defendant assessed the damage to his vehicle and found no evidence of foliage or organic matter consistent with a collision of the vehicle with a tree branch.

- While there was no evidence of a tree or branch striking the vehicle, what *was* left behind on the vehicle was Mr. Bishop's DNA on the edge of the sunroof of Defendant's vehicle, as well as scuff marks from the handlebars of the bicycle on the vehicle's hood, pieces of fabric from Mr. Bishop's shirt on the vehicle, and scuff marks across the roof which the Court inferred were made by Mr. Bishop's helmet that remained strapped to his head when Mr. Bishop was vaulted over the roof of the vehicle.

- Defendant did not report the accident to the police until the next morning.

Defendant's consciousness of guilt was established by (i) leaving the scene of the accident; (ii) reluctance to report the accident to his employer; and (iii) instinct to "hide the car" after the accident.[14]  Furthermore, based on the evidence at trial and the decisional law, the Court found that Defendant acted recklessly.  Specifically,

---

[14] The Court considered this evidence for the limited purpose of Defendant's consciousness of guilt and not as evidence of Defendant's character.  *See Pardo*, 2015 WL 6945310, at *7 n.39.

the Court made the following findings of fact with respect to Defendant's recklessness:

- There was no evidence of Defendant braking or otherwise attempting to avoid the collision.

- Based on expert reconstruction testimony, the collision occurred in the southbound lane of Brackenville Road while Defendant was driving northbound in the southbound lane with his vehicle positioned over the center line in the lane designated for oncoming traffic.

- Defendant conceded in open court that while driving by straddling the double yellow line may be safer for him, it does not take into account, nor is it safer for, other persons, vehicles, or bicycles traveling in the opposite direction.

- Defendant made a conscious decision to use more of the roadway than was legally available to him.

- The risk of injury to persons travelling southbound was of such a nature and degree that placement of Defendant's vehicle over the center line was a gross deviation from the standard of conduct that a reasonable person would observe in that situation.

- Defendant was exceeding the speed limit after consuming alcohol.

Based on its findings of fact and conclusions of law, the Court found Defendant Guilty of all charges. The Court ordered a pre-sentence investigation.

## IV. Defendant's Post-Conviction Challenges to the Court's Findings of Fact and Conclusions of Law

Trial Counsel timely filed a motion for a new trial on the LSCRD charge and a motion for judgment of acquittal on the Manslaughter, LSCRD, and Endangering the Welfare of a Child convictions. The State opposed both motions. With respect

12

to the motion for a new trial, Trial Counsel argued that the LSCRD statute is unconstitutional because a LSCRD conviction carries minimum mandatory prison time even though the State does not need to prove that a defendant had a certain mental state or *mens rea*. With respect to the motion for judgment of acquittal, Trial Counsel argued that the State's evidence was insufficient to support the convictions and that the Court misinterpreted the LSCRD statute when it found Defendant guilty of LSCRD.

The Court denied both motions.[15]

## V. Trial Counsel's Motion to Withdraw as Counsel and Motion for Recusal of the Trial Court Judge

Prior to sentencing, Trial Counsel filed a motion to withdraw as counsel ("Withdrawal Motion"). Trial Counsel cited as the basis of the Withdrawal Motion "irreconcilable conflicts of interest" between Defendant and Trial Counsel and requested an *in camera* proceeding to inform the Court of the facts giving rise to the alleged conflicts. Trial Counsel also filed a motion for recusal of this judicial officer limited to Trial Counsel's Withdrawal Motion, arguing that the information that Trial Counsel intended to disclose to the Court during the *in camera* proceeding would prejudice the Court against Defendant. The Court declined to proceed *in*

---

[15] *See Pardo*, 2015 WL 6945310, at *8.

*camera*; instructed Trial Counsel that he was not permitted to make disclosures that would be prejudicial to his client;[16] and denied Trial Counsel's recusal motion.[17]

During the hearing on Trial Counsel's Withdrawal Motion, Defendant confirmed to the Court that irreconcilable differences had arisen between Defendant and Trial Counsel and claimed Trial Counsel did not "have the heart to continue representing [Defendant]" which gave rise to a "conflict of interest."[18] The Court granted the Withdrawal Motion and postponed sentencing to provide Defendant with additional time to retain new counsel.

## VI. Sentencing

New counsel ("Sentencing Counsel") entered an appearance on behalf of Defendant for sentencing and presented mitigating evidence.[19] A sentencing hearing was held. The Court sentenced Defendant to eight years and seven months of unsuspended Level V time, suspended an additional 20 years of Level V time, and imposed decreasing levels of community-based supervision.

---

[16] Specifically, the Court reminded Trial Counsel that such disclosures are inconsistent with Trial Counsel's obligations as a Delaware lawyer. *See State v. Pardo*, No. 1409011585, at *3 (Del. Super. Ct. Oct. 27, 2015) ("Rather than seek recusal so that defense counsel can reveal information that may prejudice his client, defense counsel should proceed consistent with his professional obligations and strictly limit disclosures to the Court.").

[17] *See State v. Pardo*, No. 1409011585 (Del. Super. Ct. Oct. 27, 2015) (denying motion for recusal).

[18] Hr'g Tr. 12:19–22, Nov. 10, 2015.

[19] Defendant's ineffective assistance of counsel claims are not addressed to the representation of Sentencing Counsel.

## VII. Appellate Proceedings

Defendant raised several issues in a timely appeal.[20] The principal issue raised was whether Defendant's LSCRD conviction violated Defendant's due process rights. Specifically, Defendant argued that the LSCRD statute is a strict liability statute and that the imposition of a felony conviction and a minimum mandatory period of imprisonment under the LSCRD statute therefore violated Defendant's right to due process. The Delaware Supreme Court rejected Defendant's arguments, holding that the LSCRD statute required the State to prove beyond a reasonable doubt that Defendant *knew* he was involved in a collision.[21] The Supreme Court found that the State produced sufficient evidence to support this Court's finding that Defendant knew he was involved in a collision and therefore affirmed Defendant's LSCRD conviction.[22]

Defendant raised several additional claims which lacked merit according to the Supreme Court.[23] First, Defendant argued that this Court erred by considering evidence of Defendant's voluntary intoxication as relevant to the Manslaughter

---

[20] For the appeal, Defendant was represented by another lawyer from Sentencing Counsel's law firm ("Appellate Counsel"). Defendant's ineffective assistance of counsel claims are not addressed to representation by Appellate Counsel.

[21] *See Pardo*, 160 A.3d at 1145 ("[T]he General Assembly intended that the State must prove that the defendant had knowledge that a collision occurred but failed to stop.").

[22] *See id.* at 1148.

[23] *See id.* at 1148–53.

charge. The Supreme Court rejected this argument, finding this Court did not abuse its discretion by considering evidence of Defendant's pre-collision alcohol consumption.[24] Next, Defendant argued that this Court did not consider all of the evidence and improperly considered some evidence and therefore erred by denying Defendant's motion for judgment of acquittal. The Supreme Court rejected this argument, finding that this Court, as the finder of fact, properly considered the evidence presented at trial.[25]

Defendant also argued that video testimony of Defendant's son, John Pardo, contained impermissible hearsay. Trial Counsel did not object to admissibility of the statement; accordingly, the Supreme Court reviewed this Court's admission of the statement for plain error.[26] The Supreme Court found no plain error in this Court's consideration of the statement, concluding that the evidence of Defendant's guilt was overwhelming even absent the purported hearsay.[27]

Finally, Defendant argued that this Court erred by denying a missing evidence instruction on the grounds that certain evidence offered at trial was originally

---

[24] *See id.* at 1148–49.

[25] *See id.* at 1150 ("In this bench trial, the [Superior Court] as finder of fact was free to accept or reject any or all of the sworn testimony, as long as it considered all of the evidence presented. After reviewing the parties' arguments and the record in this case, we see no basis from which to conclude that the Superior Court failed to appropriately consider the evidence.").

[26] *See id.* at 1150–51 ("[Defendant] presses an issue not fairly presented below that is waived, absent plain error, which does not exist.").

[27] *See id.* at 1151–53.

16

recovered by a reporter from the scene of the collision but not collected by law enforcement and was therefore not appropriately collected. The Supreme Court rejected this argument, finding that a missing evidence instruction was not required because the State did not fail to collect and preserve the evidence.[28]

The Supreme Court affirmed Defendant's convictions and sentence.[29]

## DEFENDANT'S CLAIMS FOR POSTCONVICTION RELIEF

Defendant asserts ten grounds for postconviction relief, all of which allege ineffective assistance of Trial Counsel, as follows: (1) by inadequately arguing that there was insufficient evidence to support the Manslaughter conviction in the motion for judgment of acquittal; (2) by withdrawing the Toxicology Results Motion; (3) by failing to object to hearsay in John Pardo's previously recorded video testimony; (4) by failing to engage in plea negotiations on Defendant's behalf; (5) by failing to offer evidence showing Defendant was not under the influence of alcohol at the time of the collision; (6) by failing to subject the State's case to adversarial testing; (7) by failing to produce an expert crash reconstruction witness at trial; (8) by failing to request a language interpreter for Defendant; (9) by failing to recognize a conflict of interest based on Defendant's purported intimate relationship with one of Trial

---

[28] *See id.* at 1153.
[29] *See Pardo v. State*, 160 A.3d 1136 (Del. 2017).

Counsel's employees; and (10) that Defendant suffered prejudice as a result of Trial Counsel's cumulative errors.

## I.     Standard of Review

### A.     Procedural Bars

Superior Court Rule of Criminal Procedure 61 governs Defendant's Rule 61 Motion. Postconviction relief is a "collateral remedy which provides an avenue for upsetting judgments that have otherwise become final."[30] To protect the finality of criminal convictions, the Court must consider the procedural requirements for relief set forth in Rule 61(i) before addressing the merits of the Rule 61 Motion.[31]

Rule 61(i)(1) bars a motion for postconviction relief if it is filed more than one year from the final judgment of conviction;[32] this bar is not applicable as Defendant's Rule 61 Motion was timely. Rule 61(i)(2) bars successive postconviction motions;[33] this bar is not applicable as this is Defendant's first postconviction motion. Rule 61(i)(3) bars relief if the motion includes claims not asserted in prior proceedings leading to the final judgment, unless the movant shows cause for relief from the procedural default and prejudice from violation of the movant's rights.[34] Rule 61(i)(4) bars relief if the motion includes grounds for relief

---

[30] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).
[31] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[32] Super. Ct. Crim. R. 61(i)(1).
[33] Super. Ct. Crim. R. 61(i)(2).
[34] Super. Ct. Crim. R. 61(i)(3).

formerly adjudicated in any proceeding leading to the judgment of conviction, in an appeal, or in a postconviction proceeding.[35]  Rule 61(i)(5) provides that Rule 61(i)'s procedural bars shall not preclude the Court from reaching the merits of claims based on the Court's lack of jurisdiction or claims alleging the existence of new evidence showing the defendant's innocence or the existence of a new rule of constitutional law that applies retroactively and renders the defendant's conviction invalid.[36]

## B.    Standard for Ineffective Assistance of Counsel

The Sixth Amendment guarantees defendants in criminal trials the right to counsel.[37]  To assure that the outcome of a criminal trial is just, defendants furthermore have "the right to effective assistance of counsel."[38]  The standard used to evaluate claims of ineffective counsel is the two-prong test articulated by the United States Supreme Court in *Strickland v. Washington*,[39] as adopted in Delaware.[40]  The movant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[35] Super. Ct. Crim. R. 61(i)(4).
[36] *See* Super. Ct. Crim. R. 61(i)(5).
[37] *Gideon v. Wainright*, 372 U.S. 335, 342–43 (1963).
[38] *McMann v. Richardson*, 397 U.S. 759, 771 (1970).
[39] 466 U.S. 668 (1984).
[40] *See Albury v. State*, 551 A.2d 53 (Del. 1988).

19

different.[41]    Failure to prove either prong will render the claim insufficient;[42] therefore, even if a defendant can show that counsel made a professionally unreasonable error, the defendant must still show that the error had an effect on the judgment.[43] The Court must determine whether there is a reasonable probability that the outcome would have been different had Trial Counsel not made the alleged errors.[44] This standard is lower than a preponderance of the evidence standard, as it only requires a finding that Trial Counsel's actions undermine confidence in the outcome of the proceeding in question.[45] Moreover, the Court shall dismiss entirely conclusory allegations of ineffective counsel.[46]

With respect to the first prong—the "performance prong"—the movant must overcome the strong presumption that counsel's conduct was professionally reasonable.[47] To satisfy the performance prong, Defendant must assert specific

---

[41] *Strickland*, 466 U.S. at 687.

[42] *Id.* at 688; *see also State v. McLaughlin*, 2014 WL 2964945, at *2 (Del. Super. Ct. July 2, 2014), *aff'd*, 2015 WL 1306916 (Del. Mar. 23, 2015) ("Because a defendant must show both that an attorney made a professionally unreasonable error and that the error had an effect on the judgment, failure to prove either is sufficient to defeat a claim of ineffective assistance."); *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

[43] *Strickland*, 466 U.S. at 692.

[44] *Id.* at 694.

[45] *Id.*; *see also Burns v. State*, 76 A.3d 780, 786 (Del. 2013) (applying *Strickland*'s prejudice prong in the context of a plea rejection).

[46] *Younger*, 580 A.2d at 555; *Jordan v. State*, 1994 WL 466142, at *1 (Del. Aug. 25, 1994).

[47] *Strickland*, 466 U.S. at 687–88.

allegations to establish that Trial Counsel acted unreasonably.[48] The United States Supreme Court has pointed to "prevailing professional norms" as the standard against which to judge the reasonableness of counsel's representation with great deference given to counsel's strategic judgments.[49] Simply because another strategy may have produced a better outcome in hindsight is not enough for a court to rule that a lawyer's performance was ineffective, given the strong presumption that the performance was adequate.[50]

With respect to the second prong—the "prejudice prong"—the movant must provide concrete allegations of prejudice, specifying the nature of the prejudice and the adverse effects actually suffered.[51] Cumulative error can satisfy the prejudice prong when it undermines confidence in the verdict.[52]

## II.     Defendant's Claim Regarding the Court's Finding of Recklessness Is Procedurally Barred

Defendant's first ineffective assistance of counsel claim argues that Trial Counsel provided Defendant with ineffective assistance because Trial Counsel did not effectively argue there was insufficient evidence to support a finding of

---

[48] *Id.* at 688; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) ("Mere allegations of ineffectiveness will not suffice.").

[49] *Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

[50] *See id.* at 680, 689, 712.

[51] *Id.* at 692; *Dawson*, 673 A.2d at 1196.

[52] *See Starling v. State*, 2015 WL 8758197, at *14–15 (Del. Dec. 14, 2015).

recklessness. According to Defendant, the Court's finding that Defendant acted recklessly because he was "under the influence" of alcohol at the time of the collision was the result of Trial Counsel's failure to persuade this Court that Defendant was negligent and not reckless. Defendant's first claim amounts to an argument that this Court should not have considered evidence of Defendant's pre-collision alcohol consumption and therefore should have found Defendant not guilty of Manslaughter which requires a finding of recklessness. The Delaware Supreme Court already found the State's evidence sufficient to establish a Manslaughter conviction[53] and held that this Court did not abuse its discretion by considering evidence of Defendant's voluntary intoxication.[54] Accordingly, Defendant's first claim for relief was formerly adjudicated and is therefore barred by Rule 61(i)(4). Because this claim does not meet the exceptions set forth in Rule 61(i)(5), the claim must be denied.

---

[53] *See Pardo*, 160 A.3d at 1150 ("Given the evidence presented at trial, . . . a rational finder of fact could find the defendant guilty of manslaughter beyond a reasonable doubt.").
[54] *See id.* at 1149 ("The Superior Court properly considered [Defendant's] alcohol consumption as it related to his state of mind.").

## III. Defendant's Ineffective Assistance of Counsel Claims that Are Not Procedurally Barred

### A. Trial Counsel's Withdrawal of the Toxicology Results Motion Was Reasonable

Defendant argues that Trial Counsel was ineffective for withdrawing the Toxicology Results Motion. Trial Counsel concluded, after "considerable research," that Mr. Bishop's toxicology screen results were not relevant. "Irrelevant evidence is not admissible."[55] Delaware Rule of Evidence 401 governs the relevance of evidence and provides that evidence is relevant if it tends to make a fact "of consequence in determining the action" more or less probable.[56]

Trial Counsel originally sought to introduce the results of Mr. Bishop's toxicology screen to show that Mr. Bishop's conduct contributed to the collision and, in turn, Mr. Bishop's own death. In other words, the Toxicology Results Motion argued that the THC found in Mr. Bishop's bloodstream was relevant to the causation element of the Manslaughter charge. After further research and discussions with an expert witness, however, Trial Counsel learned that there is no meaningful correlation between the level of THC in a person's bloodstream and that

---

[55] D.R.E. 402.

[56] D.R.E. 401; *see also Lilly v. State*, 649 A.2d 1055, 1060 (Del. 1994) ("The definition of relevance encompasses materiality and probative value. Evidence is material if the fact it is offered to prove is 'of consequence' to the action." (citations omitted)).

person's impairment.[57]  Thus, Trial Counsel correctly concluded that the THC in Mr. Bishop's bloodstream was not probative of the cause of Mr. Bishop's death and therefore irrelevant.  Accordingly, it was professionally reasonable to withdraw the Toxicology Results Motion and Defendant therefore cannot satisfy the performance prong of *Strickland*.  In any event, even if Trial Counsel had presented this motion, relief would have been denied.  Consistent with decisional law,[58] the Court would not have permitted evidence regarding THC in Mr. Bishop's blood.  The evidence showed Mr. Bishop's own conduct did not contribute to his death.

This claim of ineffective assistance of counsel must be denied.

### B.    Trial Counsel's Failure to Object to Hearsay Was Reasonable and Did Not Prejudice Defendant

Defendant next argues that Trial Counsel was ineffective for not objecting to the admission of Gabe Pardo's statement, "You killed a person," which the State introduced through the previously recorded video testimony of John Pardo.

---

[57] *Accord State v. Bowers*, 2011 WL 13175123, at *4 (Del. Com. Pl. June 27, 2011) ("[T]he scientific community has found it difficult to establish a relationship between a person's THC blood concentration and the effects it may have on an individual."); *see also* Nat'l Highway Traffic Safety Admin., *Marijuana-Impaired Driving* 22–23 (July 2017), https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/812440-marijuana-impaired-driving-report-to-congress.pdf ("[T]here is evidence that marijuana use impairs psychomotor skills, divided attention, lane tracking, and cognitive functions.  However, its role in contributing to the occurrence of crashes remains less clear." (citations omitted)).

[58] *See Robbins v. William H. Porter, Inc.*, 2006 WL 2959483, at *1–2 (Del. Super. Ct. Oct. 3, 2006) (finding toxicology reports of blood samples which tested positive for cannabinoids inadmissible to show the cause of a motor vehicle accident).

Defendant argues that Gabe Pardo's statement was impermissibly embedded hearsay and that Trial Counsel's failure to object to the statement's admission was therefore unreasonable. Defendant further argues that Trial Counsel's failure to object to the statement's admission prejudiced Defendant because this Court considered the statement in its findings of fact.

The admission of John Pardo's testimony is governed by 11 *Del. C.* § 3507, which provides that "the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value."[59] Hearsay statements embedded within Section 3507 statements are admissible if an exception to the hearsay rule applies to the embedded statement.[60]

Trial Counsel's failure to object to the statement's admission was not unreasonable, and the statement's admission did not prejudice Defendant. With respect to the reasonableness of Trial Counsel's failure to object, Gabe Pardo's embedded statement qualified as an "excited utterance," which is "not excluded by the rule against hearsay,"[61] and John Pardo's Section 3507 statement was properly

---

[59] 11 *Del. C.* § 3507(a).
[60] *See Archy v. State*, 2009 WL 1913582, at *3 (Del. July 6, 2009) (finding a hearsay statement embedded with a Section 3507 statement admissible because the embedded statement was admissible under an exception to the hearsay rule); *see also* D.R.E. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").
[61] *See* D.R.E. 803(2).

admitted under 11 *Del. C.* § 3507. An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."[62] To qualify as an excited utterance, the statement must satisfy three requirements: "(1) the excitement of the declarant must have been precipitated by an event; (2) the statement being offered as evidence must have been made during the time period while the excitement of the event was continuing; and (3) the statement must be related to the startling event."[63] Gabe Pardo was a passenger in Defendant's vehicle when the collision occurred and made the statement immediately after, and as a result of, the collision. The statement related to the collision. Gabe Pardo's statement therefore met each of the requirements of an excited utterance.

John Pardo's Section 3507 statement was also properly admitted into evidence. Trial Counsel originally raised a foundational objection to the Section 3507 statement, but the State cured the alleged defect and played the statement during John Pardo's in-court testimony. Because John was present and subject to cross-examination, John's voluntary videotaped statement was properly admitted under 11 *Del. C.* § 3507. Therefore, because both statements met the requirements

---

[62] *Id.*
[63] *Gannon v. State*, 704 A.2d 272, 274 (Del. 1998).

for exceptions to the hearsay rule, Trial Counsel's failure to object to the statement's admission was professionally reasonable.[64]

Even if Trial Counsel's failure to object to the statement's admission was unreasonable, Defendant cannot establish an ineffective assistance of counsel claim on that basis because the statement did not prejudice Defendant. The statement was only one piece of evidence establishing Defendant's guilt.[65] As the Delaware Supreme Court found: "Even excluding the Superior Court's reference to the son's 3507 statement, as well as [Defendant's] other evidentiary challenges on appeal, the remaining evidence of [Defendant's] guilt is overwhelming."[66] Defendant cannot establish that exclusion of the statement would have changed the result at trial. Therefore, Trial Counsel's failure to object to the statement's admission did not prejudice Defendant.

Defendant cannot satisfy either prong of *Strickland* with respect to this ineffective assistance of counsel claim. Accordingly, this claim must be denied.

---

[64] *See Flonnory v. State*, 893 A.2d 507, 516 (Del. 2006) ("If double hearsay is being offered into evidence, each aspect must qualify *independently* as an exception to the hearsay rule." (quoting *Demby v. State,* 695 A.2d 1152, 1162 (Del.1997))).

[65] *See Pardo*, 2015 WL 6945310, at *5–8.

[66] *Pardo*, 160 A.3d at 1153.

## C. Trial Counsel's Failure to Negotiate a Plea Favorable to Defendant Did Not Prejudice Defendant

Defendant next argues that Trial Counsel provided Defendant with ineffective assistance because Trial Counsel did not negotiate a favorable plea for Defendant. Defendant now claims that he would have accepted a plea offer that included a conviction carrying a shorter sentence than the sentence Defendant is currently serving, regardless of whether or not the charge was a felony offense. The extensive record in this case belies Defendant's claim, and Defendant therefore cannot satisfy *Strickland*'s prejudice prong.

To establish prejudice in the context of plea negotiations, the movant must show that

> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.[67]

Before trial, Defendant made clear his unwillingness to plead guilty to anything less than a felony. The Court confirmed Defendant's position by speaking with Defendant directly and even confirmed that Defendant was unwilling to plead to a felony that did not carry a minimum mandatory sentence. Accordingly,

---

[67] *Burns*, 76 A.3d at 785 (quoting *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)).

Defendant acknowledged in open court that the range of possible penalties included the sentence that was imposed by the Court in this case. The State was unwilling to extend a plea offer that included anything less than a felony offense,[68] making the most favorable plea offer that Trial Counsel *could have* negotiated on Defendant's behalf a felony guilty plea. Because Defendant made clear that he would have rejected such an offer, Defendant cannot now claim that there is a "reasonable probability" that he would have accepted that plea had Trial Counsel negotiated it on Defendant's behalf.[69] Therefore, Defendant was not prejudiced by Trial Counsel's failure to negotiate a favorable plea offer because Trial Counsel's strategy was consistent with Defendant's representations to the Court. Any plea negotiations by Trial Counsel would have been futile and therefore no prejudice was suffered.

Defendant cannot satisfy the prejudice prong of *Strickland* and, therefore, this claim of ineffective assistance of counsel must be denied.[70] Because the Court finds

---

[68] The State has no obligation to offer a plea bargain. *State v. Grossberg*, 1998 WL 473030, at *1 (Del. July 8, 1998); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("Plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial." (quoting *Brady v. United States*, 397 U.S. 742, 752 (1970))).

[69] *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

[70] *See id.* at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

no prejudice, the Court will not address whether Trial Counsel's failure to negotiate a plea offer was objectively reasonable under the prevailing professional norms.[71]

### D. Trial Counsel's Reasonably Handled Evidence of Defendant's Pre-Collision Alcohol Consumption

Defendant argues that Trial Counsel rendered ineffective assistance by failing to offer evidence showing Defendant was not "under the influence" of alcohol at the time of the collision.[72]  Specifically, Defendant cites Trial Counsel's withdrawal of a "motion *in limine*" which Defendant claims sought to introduce evidence showing that Defendant was not "under the influence."  The Court's extensive review of the record in this case revealed that the only motion that might relate to Defendant's claim is the Alcohol Consumption Motion, which sought to *exclude* evidence of Defendant's alcohol consumption.

Trial Counsel withdrew the Alcohol Consumption Motion after it was established that the case would proceed to a bench trial.  In withdrawing the Alcohol Consumption Motion, Trial Counsel reasoned that his concerns regarding the

---

[71] *See id.* ("The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

[72] Defendant alternates between using the terms "intoxication" and "under the influence."  The Court notes that "it did not make a legal finding that Defendant was impaired or intoxicated at the time of the accident."  *See Pardo*, 2015 WL 6945310, at *5 n.38.  Rather, the Court found that "Defendant was 'under the influence' of alcohol, consistent with Delaware statutory law."  *See id.* (citing 21 *Del. C.* § 4177(c)(11)).

evidence's potential prejudicial effects were alleviated by a judge, rather than a jury, serving as the finder of fact. Trial Counsel reasoned that a judge would not experience the same "emotional override" from hearing evidence of Defendant's alcohol consumption that a jury might experience and that Trial Counsel could sufficiently argue that the evidence carried less weight than other evidence purporting to show that Defendant was not under the influence at the time of the collision. Trial Counsel's withdrawal of the Alcohol Consumption Motion was based on sound strategic reasoning and therefore *Strickland*'s performance prong is satisfied by Trial Counsel's reasonable strategic decisions.[73]

Even if Trial Counsel had not withdrawn the Alcohol Consumption Motion, Defendant did not suffer prejudice.[74] Even if the Court had granted the Alcohol Consumption Motion, Defendant cannot demonstrate that he would have been found not guilty. The Court considered Defendant's alcohol consumption as it related to Defendant's state of mind.[75] In other words, Defendant's alcohol consumption showed that Defendant was "under the influence" and therefore *recklessly* caused

---

[73] *See id.* at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

[74] *See Monroe v. State*, 2015 WL 1407856, at *6 (Del. Mar. 25, 2015) ("*Strickland* requires more than mere possibility of prejudice; a petitioner in a Rule 61 motion alleging ineffective assistance of counsel 'must make specific allegations of actual prejudice and substantiate them.'" (quoting *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996))).

[75] *See Pardo*, 2015 WL 6945310, at *7.

31

Mr. Bishop's death. Other evidence presented at trial also established Defendant's recklessness. In particular, evidence presented at trial showed that Defendant was intentionally driving at least partially in the lane of oncoming traffic on a narrow, winding road while exceeding the posted speed limit when the collision occurred.[76] In addition, the Court found no evidence of Defendant braking or otherwise attempting to avoid the collision.[77] These facts alone would have established Defendant's recklessness.[78] Defendant cannot show that Trial Counsel's withdrawal of the Alcohol Consumption Motion changed the outcome of Defendant's trial. Accordingly, Defendant's ineffective assistance of counsel claim does not meet *Strickland*'s prejudice prong with respect to Trial Counsel's withdrawal of the Alcohol Consumption Motion.

To the extent Defendant claims that Trial Counsel did not offer evidence rebutting the State's evidence showing Defendant was "under the influence," Defendant's claim is conclusory.[79] To be sure, Trial Counsel did produce evidence calling into question whether Defendant was under the influence. Specifically, Trial

---

[76] *See id.*

[77] *Id.*

[78] *Accord Pardo*, 160 A.3d at 1150 ("Given the evidence presented at trial, including particularly [Defendant's] 'strategy' of intentionally driving partially in the oncoming lane of traffic on a narrow, winding road, a rational finder of fact could find the defendant guilty of manslaughter beyond a reasonable doubt.").

[79] *See Jordan*, 1994 WL 466142, at *1 (finding conclusory allegations to be legally insufficient to prove insufficient assistance of counsel).

Counsel elicited testimony describing the amount of food and water that Defendant consumed that day, the period of time over which Defendant consumed the alcoholic beverages, and Defendant's demeanor prior to the collision. Therefore, Defendant's ineffective assistance of counsel claim does not meet either prong of *Strickland* and must be denied.

### E. Trial Counsel Subjected the State's Case to Meaningful Adversarial Testing

Defendant next claims that Trial Counsel failed to subject the State's case to adversarial testing and therefore provided Defendant with ineffective assistance.[80] This claim implicates the standard set forth in *United States v. Cronic*, under which a movant need not satisfy the *Strickland* test if the movant has successfully alleged

---

[80] While Defendant's Rule 61 Motion states a conclusory claim of ineffective assistance for failure to challenge the State's case through adversarial testing, Defendant's reply to the State's response in opposition to the Rule 61 Motion asserts that this claim applies to Trial Counsel's failure to produce the testimony of a crash reconstruction expert. Defendant also cites Trial Counsel's failure to present a crash reconstruction expert as the basis for a separate ineffective assistance of counsel. Defendant's adversarial-testing claim implicates the standard for ineffective assistance of counsel claims set forth in *United States v. Cronic*, which presumes prejudice when a defendant's counsel completely fails to test the prosecutor's case. *See United States v. Cronic*, 466 U.S. 648, 659 (1984). The *Cronic* standard applies when the movant "alleges a defect in the 'proceeding as a whole'" and not merely "at 'specific points' of the trial." *Cooke v. State*, 977 A.2d 803, 849 (Del. 2009) (quoting *Bell v. Cone*, 535 U.S. 685, 697 (2002)). Trial Counsel's failure to present the testimony of a crash reconstruction expert is a "specific point" of the trial, which is analyzed under the *Strickland* standard. *See id.* Accordingly, the Court addresses the crash reconstruction expert claim separately below.

one of three "scenarios" creating a presumption of prejudice.[81]  One such scenario is "where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."[82]  To establish a presumption of prejudice under this scenario, the movant must allege "a defect in the 'proceeding as a whole'" that undermined the outcome.[83]

Defendant's adversarial-testing claim is conclusory.  And while the Court dismisses entirely conclusory allegations of ineffective counsel,[84] the record clearly demonstrates Trial Counsel's vigorous efforts to challenge to the State's case: Trial Counsel filed multiple pre-trial motions and memoranda of law challenging the constitutionality of the LSCRD statute, the LSCRD charge, and a potential LSCRD conviction; questioned and challenged the recollection of the State's witnesses; questioned and attacked the credibility of the State's crash reconstruction expert; made numerous evidentiary objections, many of which the Court sustained; presented testimony of several witnesses, including Defendant, in Defendant's own case in chief; and filed motions for a new trial and judgment of acquittal after the

---

[81] The three scenarios creating a presumption of prejudice under *Cronic* are: "(1) where there is a complete denial of counsel; (2) where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) where counsel is asked to provide assistance in circumstances where competent counsel likely could not."  *Cooke*, 977 A.2d at 848.

[82] *Id.* (discussing the *Cronic* standard).

[83] *Id.* at 849 (quoting *Bell*, 535 U.S. at 697).

[84] *Younger*, 580 A.2d at 555; *Jordan*, 1994 WL 466142, at *1.

34

Court announced its verdict. Based on these facts, Defendant was not deprived of the right "to require the prosecution's case to survive the crucible of meaningful adversarial testing,"[85] and Trial Counsel's conduct therefore did not create a "breakdown in the adversarial process that would justify a presumption that [Defendant's] conviction was insufficiently reliable to satisfy the Constitution."[86] Accordingly, this ineffective assistance of counsel claim does not meet the *Cronic* standard and, therefore, must be denied.

### F. Trial Counsel's Failure to Present a Crash Reconstruction Expert Was Reasonable and Did Not Prejudice Defendant

Defendant argues that Trial Counsel rendered ineffective assistance by not calling a crash reconstruction expert to testify. Defendant's argument involves two separate purported expert witnesses. First, Defendant argues that Trial Counsel's failure to call Dr. George Govatos amounted to ineffective assistance. Defendant had originally hired Dr. Govatos as a crash reconstruction expert but ultimately did not call Dr. Govatos because Trial Counsel considered Dr. Govatos to be an "adverse witness."[87] Indeed, Dr. Govatos's anticipated testimony was so adverse to Defendant that the State sought to compel Dr. Govatos to testify as an expert in support of the State's case, but the Court rejected the State's request as a result of

---

[85] *Cronic*, 466 U.S. at 657.
[86] *Id.* at 662.
[87] Tr. Trial 151:18–150:5, Sept. 30, 2015.

Trial Counsel's successful motion to disqualify Dr. Govatos as an expert witness for the State.[88]

Defendant also argues that Trial Counsel rendered ineffective assistance by not calling a person named "Rick Wright" as an expert. The only references to Mr. Wright appear in Defendant's motion and supplemental exhibits. Specifically, Defendant cites a post-trial letter from Trial Counsel addressed to Defendant in which Trial Counsel states his plan to "send the whole evidentiary package to Rick" and to ask Rick whether Rick can offer an opinion concluding that the collision occurred in the northbound lane. The letter further states that Rick, in a brief conversation with Trial Counsel, indicated that he had identified potential problems with the State's expert's conclusions but "did not go so far as to say . . . 'In my judgment, there is no reason to believe that the collision took place in the southbound lane.'"

Trial Counsel's decision not to call Dr. Govatos as an expert witness was professionally reasonable in light of Dr. Govatos's potential adverse testimony. The reasonableness of that decision is underscored by the State's attempt to call Dr. Gavatos to testify as an expert in support of the State's case.

With respect to Mr. Wright, Defendant offers no support for Defendant's claim that Trial Counsel's failure to call Mr. Wright as an expert witness was

---

[88] *See id.* at 138:8–155:1.

36

unreasonable. The only evidence to which Defendant cites shows that Trial Counsel knew that Mr. Wright had not formed an opinion favorable to Defendant's case, much less an opinion that meets the requirements for admissibility as expert testimony under the Delaware Rules of Evidence.[89] Accordingly, Defendant cannot show that Trial Counsel's decision not to call Mr. Wright was professionally unreasonable.

Because this claim cannot meet *Strickland*'s performance prong, the claim must be denied.

### G. Trial Counsel's Failure to Request an Interpreter Was Reasonable

Defendant next argues that Trial Counsel rendered ineffective assistance by failing to request a language interpreter. Defendant claims that Trial Counsel should have requested an interpreter because Defendant was born in another country and English is not Defendant's native language.

At no time before, during, or after trial did Defendant's interactions with Trial Counsel or the Court indicate that Defendant was having difficulty understanding the proceedings or assisting his counsel. The Court conducted several pre-trial colloquies with Defendant, including an exchange in which the Court confirmed Defendant's refusal to accept a plea offer involving a felony conviction. The Court also conducted a colloquy with Defendant before Defendant testified at trial. In each

---

[89] *See* D.R.E. 702.

instance, Defendant answered in English and the Court found Defendant's decision to be knowing, intelligent, and voluntary. In addition, Defendant's trial testimony demonstrated Defendant's command of the English language.

In light of Defendant's demonstrated ability to both speak and understand English, Trial Counsel's failure to request an interpreter was reasonable and Defendant therefore cannot meet *Strickland*'s performance prong.[90] Accordingly, this ineffective assistance of counsel claim must be denied.

**H.      Trial Counsel's Representation of Defendant While Defendant Allegedly Had Intimate Relations with Trial Counsel's Employee Was Reasonable and Did Not Prejudice Defendant**

Defendant next claims that a conflict of interest developed between Trial Counsel and Defendant because Defendant engaged in an intimate relationship with an employee of Trial Counsel during Trial Counsel's representation of Defendant. Defendant claims that a hostile relationship developed between Trial Counsel and the employee and that the hostile relationship motivated Trial Counsel to take the other allegedly deficient actions because of Defendant's alleged relationship with the employee.

---

[90] *See State v. Morales*, 2001 WL 1486169, at *3 (Del. Super. Ct. Oct. 31, 2001) (finding no ineffective assistance of counsel for failure to secure a translator because "at no time during trial did the defendant's interactions with counsel or the Court provide any indication that he was having difficulty understanding the proceedings or assisting his counsel").

"When it is alleged that the ineffective assistance of trial counsel was the result of a conflict of interest, prejudice is presumed 'only if the defendant demonstrates that counsel actively represented conflicting interests' and that 'an actual conflict of interest adversely affected [the] lawyer's performance.'"[91]   A postconviction relief motion alleging a "conflict of interest claim must specifically identify the nature of the alleged conflict and make a concrete showing of actual prejudice."[92]

In Trial Counsel's Affidavit, Trial Counsel states that he was unaware of the alleged relationship at the time of trial.  The Court accepts Trial Counsel's representation as credible.  Moreover, even if Trial Counsel's relationship with his own staff was strained, Trial Counsel was a zealous advocate for Defendant at trial.  Defendant therefore fails to establish satisfaction of either the performance prong or the prejudice prong of *Strickland* with respect to this claim.  Accordingly, this claim must be denied.

I.    **A Cumulative Review of Trial Counsel's Representation Shows Trial Counsel's Representation Did Not Prejudice Defendant**

Finally, Defendant claims that he was denied a fair trial due to the cumulative errors of Trial Counsel.  A cumulative-error claim must derive from multiple

---

[91] *Lewis v. State*, 757 A.2d 709, 718 (Del. 2000) (quoting *Strickland*, 466 U.S. at 692).

[92] *Allen v. State*, 2010 WL 3184441, at *2 (Del. 2010).

prejudicial errors.[93]  The Delaware Supreme Court has utilized a plain-error standard of review to assess cumulative-error claims.  Under that standard, cumulative error warranting relief must be based on "material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[94]  Trial Counsel committed no professional errors that prejudiced Defendant, and a cumulative review of Trial Counsel's representation likewise reveals no material defects that deprived Defendant of a substantial right or that resulted in manifest injustice.[95]  Accordingly, Defendant's final ineffective assistance of counsel claim must be denied.

## RULE 61 COUNSEL'S MOTION TO WITHDRAW

After reviewing the record to determine if there were any other meritorious grounds for relief and concluding that there are no such grounds, Rule 61 Counsel filed a motion to withdraw as counsel pursuant to Superior Court Criminal Rule 61(e)(7).  Withdrawal may be appropriate when "counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel

---

[93] *See Hoskins v. State*, 102 A.3d 724, 735 (Del. 2014).

[94] *Id.* at 735.

[95] *See State v. Madison*, 2018 WL 1935966, at *8–9 (Del. Super. Ct. Apr. 11, 2018) ("[B]ecause [the defendant] has failed on each count to prove that his trial counsel was deficient and that, but for trial counsel's performance, the outcome of the trial would have been different, [the defendant] fails in the aggregate.").

40

is not aware of any other substantial ground for relief available to the movant."[96] The Court must also conduct a review of the record to determine whether the defendant's motion contains any reasonable grounds for relief.[97]

Rule 61 Counsel has stated that he undertook a thorough analysis of the record to evaluate the claims stated in Defendant's Initial Rule 61 Motion and determined that the claims do not have enough merit to be ethically advocated. Specifically, Rule 61 Counsel has concluded that there is not sufficient evidence to conclude that Trial Counsel was ineffective and that Defendant's first ineffective assistance of counsel claim is procedurally barred.[98] Rule 61 Counsel also reviewed the record to determine if any other meritorious grounds for relief exist and found none. Finally, the Court has reviewed Defendant's Rule 61 Motion and has found no meritorious grounds for relief.

## CONCLUSION

Defendant's claims for postconviction relief are either procedurally barred or without merit. Defendant has not established ineffective assistance of counsel under the tests set forth in *Strickland* or *Cronic*. Accordingly, Defendant's Rule 61 Motion must be denied.

---

[96] Super. Ct. Crim. R. 61(e)(7).

[97] *State v. West*, 2013 WL 6606833, at *3 (Del. Super. Ct. Dec. 12, 2013).

[98] Rule 61 Counsel also found that Defendant's first ineffective assistance of counsel claim lacked merit.

Rule 61 Counsel was appointed to represent Defendant in the postconviction proceedings and, after a careful review, concluded that there are no meritorious grounds for postconviction relief that can be ethically advocated. Accordingly, Rule 61 Counsel shall be permitted to withdraw as counsel.

**NOW, THEREFORE, this 26th day of November 2019, Defendant Gabriel Pardo's Rule 61 Motion is hereby DENIED and the motion of Patrick Collins, Esquire to withdraw as counsel is hereby GRANTED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*
_____
**The Honorable Andrea L. Rocanelli**